**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

CASTLEMORTON WIRELESS, LLC,

               Plaintiff,

      v.                          Civil Action No. 1:20-CV-00057-RGA

PIONEER & ONKYO U.S.A. CORPORATION
and ONKYO U.S.A. CORPORATION,

               Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Anthony F. Lo Cicero (*Admitted Pro Hac Vice*)
Mark Berkowitz (*Admitted Pro Hac Vice*)
Marc J. Jason (*Admitted Pro Hac Vice*)
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
212.336.8000
alocicero@arelaw.com
mberkowitz@arelaw.com
mjason@arelaw.com

Kenneth L. Dorsney (I.D. #3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

Dated:  April 16, 2020

*Attorneys For Defendants
Pioneer & Onkyo U.S.A. Corporation and
Onkyo U.S.A. Corporation*

## **TABLE OF CONTENTS**

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.     SUMMARY OF THE ARGUMENT ..............................................................................1

III.    FACTUAL BACKGROUND ...........................................................................................2

    A.      The Parties ...........................................................................................................2

    B.      The '421 Patent ...................................................................................................3

    C.      IEEE 802.11 Wireless Standards ......................................................................3

    D.      The First Amended Complaint...........................................................................4

IV.     LEGAL STANDARD.......................................................................................................4

    A.      Federal Rule of Civil Procedure 12(b)(6) .........................................................4

    B.      Section 101 Patent Eligibility ............................................................................5

        1.      *Alice* Test .................................................................................................6

V.      ARGUMENT ....................................................................................................................7

    A.      Claim 6 of the '421 Patent Is Patent-Ineligible..............................................7

        1.      *Alice* Step One: Claim 6 of the '421 Patent Is Directed to an
            Abstract Idea -- Mathematical Relationships.............................................7

        2.      *Alice* Step Two: Claim 6 of the '421 Patent Adds Nothing of
            Patentable Significance .............................................................................11

    B.      Castlemorton's Direct Infringement Claim Is Not Plausible.................................12

    C.      Castlemorton's Inducement Allegations Are a Formulaic Recitation of the
        Elements of a Cause of Action.................................................................................15

    D.      If Sustained, Castlemorton's Inducement Claim Should Be Limited to
        Post-Suit Activities ...................................................................................17

VI.     CONCLUSION................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
  573 U.S. 208 (2014)................................................................................................ *passim*

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................................5, 15, 16

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)........................................................................................5, 15, 16

*Bilski v. Kappos,*
  561 U.S. 593 (2010).....................................................................................................7

*Bos. Scientific Corp. v. Nevro Corp.,*
  415 F. Supp. 3d 482 (D. Del. 2019)..........................................................................15

*Broadcom Corp. v. Qualcomm Inc.,*
  501 F.3d 297 (3d Cir. 2007)........................................................................................4

*Collabo Innovations, Inc. v. OmniVision Techs., Inc.,*
  No. 16-197-SLR-SRF, 2017 U.S. Dist. LEXIS 10199
  (D. Del. Jan. 25, 2017)..............................................................................................18

*Commil USA, LLC v. Cisco Sys., Inc.,*
  135 S. Ct. 1920 (2015)...............................................................................................15

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
  776 F.3d 1343 (Fed. Cir. 2014)...................................................................................5

*CyberSource Corp. v. Retail Decisions, Inc.,*
  654 F.3d 1366 (Fed. Cir. 2011).................................................................................11

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.,*
  758 F.3d 1344 (Fed. Cir. 2014)...........................................................................8, 9, 11

*E.I. Du Pont De Nemours & Co. v. Heraeus Holding GMBH,*
  No. 11-773-SLR-CJB, 2012 U.S. Dist. LEXIS 140037
  (D. Del. Sept. 28, 2012).............................................................................................14

*Elec. Power Grp., LLC v. Alstom SA,*
  830 F.3d 1350 (Fed. Cir. 2016)..................................................................................10

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)....................................................................................7

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016)....................................................................................5

*Genetic Techs. Ltd. v. Merial L.L.C.*,
    818 F.3d 1369 (Fed. Cir. 2016)....................................................................................5

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)...................................................................................................17

*Gottschalk v. Benson*,
    409 U.S. 63 (1972).......................................................................................................6

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015)..................................................................................11

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)....................................................................................8

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed Cir. 2016), *en banc reh'g denied*, No. 15-1769
    (Fed. Cir. Jan. 11, 2017) ...........................................................................................11

*IP Commc'n Solutions, LLC v. Viber Media (USA) Inc.*,
    No. 16-134-GMS, 2017 U.S. Dist. LEXIS 51770
    (D. Del. Apr. 5, 2017).................................................................................................15

*Joy Techs., Inc. v. Flakt, Inc.*,
    6 F.3d 770 (Fed. Cir. 1993) .......................................................................................13

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
    869 F.3d 1372 (Fed. Cir. 2017)..................................................................................15

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012)...........................................................................................6, 7, 12

*MGM Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)...................................................................................................16

*Modern Telecom Sys., LLC v. TCL Corp.*,
    No. 17-583-LPS-CJB, 2017 U.S. Dist. LEXIS 209717
    (D. Del. Dec. 21, 2017)..............................................................................................13

*Monec Holding AG v. Motorola Mobility, Inc.*,
    897 F. Supp. 2d 225 (D. Del. 2012)...........................................................................17

*Nexeon Ltd. v. Eaglepicher Techs., LLC*,
No. 15-955-RGA-MPT, 2016 U.S. Dist. LEXIS 96995
(D. Del. July 26, 2016) ...............................................................................16

*In re Nuijten*,
500 F.3d 1346 (Fed. Cir. 2007) ..................................................................11

*Ormco Corp. v. Align Tech., Inc*.,
463 F.3d 1299 (Fed. Cir. 2006) ..................................................................14

*Parker v. Flook*,
437 U.S. 584 (1978) ......................................................................................7

*Pinker v. Roche Holdings Ltd*.,
292 F.3d 361 (3d Cir. 2002) .........................................................................4

*Pragmatus AV, LLC v. TangoMe, Inc.*,
No. 11-1092-LPS-CJB, 2013 U.S. Dist. LEXIS 19075
(D. Del. Feb. 13, 2013) ...............................................................................16

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
855 F.3d 1322 (Fed. Cir. 2017) ...............................................................8, 11

*SIPCO, LLC v. Streetline, Inc.*,
230 F. Supp. 3d 351 (D. Del. 2017) ...........................................................15

*SoftView LLC v. Apple Inc.*,
No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677
(D. Del. July 26, 2012) .................................................................................4

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.*,
953 F.2d 1360 (Fed. Cir. 1991) ..................................................................14

*SuperInterconnect Techs. LLC v. HP Inc*.,
No. 19-0169-CFC, 2019 U.S. Dist. LEXIS 217315
(D. Del. Dec. 18, 2019) ...............................................................................12

*Two-Way Media Ltd. v. Comcast Cable Commc'ns. LLC*,
874 F.3d 1329 (Fed. Cir. 2017) ..................................................7, 9, 10, 11

## STATUTES

35 U.S.C. § 101 ........................................................................................ *passim*

35 U.S.C. § 271(a) ...........................................................................................13

35 U.S.C. § 271(b) .............................................................................................4

**RULES**

Fed. R. Civ. P. 12(b)(6)............................................................................................................ *passim*

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Castlemorton Wireless LLC ("Castlemorton") filed this action on January 15, 2020 against Pioneer Electronics (USA) Inc. and Pioneer & Onkyo U.S.A. Corporation ("P&O USA") alleging infringement of U.S. Patent No. 7,835,421 ("the '421 Patent").  On March 3, 2020, Castlemorton filed the First Amended Complaint ("FAC") substituting Onkyo U.S.A. Corporation ("Onkyo USA") for Pioneer Electronics (USA) Inc. (D.I. 8.)  Defendants P&O USA and Onkyo USA (collectively, "Onkyo Defendants") move to dismiss the FAC because it fails to state a claim upon which relief can be granted.

## II.     SUMMARY OF THE ARGUMENT

The '421 Patent claims an abstract idea and is therefore invalid under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014).  Under *Alice*, and 35 U.S.C. § 101, claims directed to "abstract ideas" are not patentable unless they provide an "inventive concept" that is "significantly more" than the abstract idea itself.  573 U.S. at 217-218.  Claim 6 of the '421 Patent, which is the only claim specifically asserted for infringement in the FAC, does not include any such inventive concept, and instead is directed to nothing more than the abstract concept of manipulating signals using mathematical formulas.  Neither claim construction nor any evidence outside the pleadings can remedy this deficiency.

In addition, the claims against the Onkyo Defendants for direct and induced infringement must also be dismissed because the FAC is nothing more than a collection of self-serving conclusory statements with no recitation of any supporting facts.  Castlemorton simply alleges that certain products offered for sale or sold by the Onkyo Defendants necessarily infringe the '421 Patent by complying with the 802.11 b or 802.11 g wireless standard, ignoring the fact that the accused products also comply with other non-infringing 802.11 wireless standards, such as 802.11 n or 802.11 ac.  Castlemorton fails to recite a single fact to support

that the products are *always* used in a manner to perform the 802.11 b or 802.11 g standard, not in a manner to perform a non-infringing standard such as 802.11n or 802.11 ac.

Furthermore, the Onkyo Defendants' involvement with the accused products are limited to importing them into the U.S., offering for sale, and selling them as consumer electronics distributors. Thus, the Onkyo Defendants cannot directly infringe Claim 6 of the '421 Patent, which is a method claim. Castlemorton has not recited any facts to support that the Onkyo Defendants perform the method allegedly covered by Claim 6, and it has failed to state a claim for direct infringement.

Finally, Castlemorton's claim of induced infringement must also be dismissed. The FAC does not contain any facts plausibly showing that the Onkyo Defendants specifically intended another party to infringe the '421 Patent with knowledge that the other party's acts constituted direct infringement of the '421 Patent. The inducement allegations just parrot the legal elements of the claim, without reciting any supporting facts.

For all of these reasons, the Onkyo Defendant's motion is ripe for dismissal under Rule 12(b)(6) at the outset of this case.

## III.   FACTUAL BACKGROUND

### A.   The Parties

Defendants P&O USA is a Delaware corporation, a distributor of consumer electronics and wholly owned by Onkyo Corporation, a Japanese corporation that manufactures and sells consumer electronics. (Akiyama Decl. ¶¶ 3-5.) Onkyo USA is also a Delaware corporation, a distributor of consumer electronics, and wholly owned by SA2 Limited, a private company. (*Id*. ¶¶ 3, 4, 6.) Despite the commonality of their names, the Onkyo Defendants are not related. (*Id*. ¶¶ 5-6.)

Plaintiff Castlemorton is a Delaware limited liability company.  (D.I. 8 ¶ 9.)  According to the FAC, Castlemorton is "the owner by assignment of all right, title and interest" in the '421 Patent.  (*Id.* ¶ 37.)

B.    **The '421 Patent**

The application which issued as the '421 Patent was filed thirty years ago, on January 22, 1990, claiming priority from a United Kingdom patent application filed on January 4, 1983. (D.I. 8, Ex. A "'421 Patent".)  The '421 Patent is entitled "Electronic Detector Circuit" and contains six claims with claims 1 and 6 being independent claims.  Claim 6, which is specifically asserted for infringement against the Onkyo Defendants by Castlemorton in the FAC, is a method claim consisting of three steps as reproduced below in its entirety:

6. A method of detecting the carrier frequency of a DSSS signal including the steps of: subtracting the DSSS signal from a signal having a higher frequency than an frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion; correlating the inverted and non-inverted DSSS signals at substantially zero relative time delay; and

identifying the said carrier frequency from the correlation signal.

('421 Patent, col. 4, ll 34-43.)

C.    **IEEE 802.11 Wireless Standards**

IEEE 802.11 wireless standards define wireless local area network protocols, specifying the medium access control protocol and the physical layer protocol.  *IEEE Standard for Information technology—Telecommunications and information exchange between systems Local and metropolitan area networks—Specific requirements - Part 11: Wireless LAN Medium Access Control (MAC) and Physical Layer (PHY) Specifications*, IEEE Std 802.11-2016 (Revision of IEEE Std 802.11-2012 (Dec. 14, 2016)), Abstract.[1]  IEEE continues to amend the 802.11

---

[1] https://ieeexplore.ieee.org/document/7786995

wireless standards for higher speed and various enhancements, and the 802.11 wireless standards published so far by IEEE include, without limitation, 802.11 b introduced in 1999; 802.11 g introduced in 2003; 802.11 n introduced in 2009; and 802.11 ac introduced in 2013. (*Id*. at 10-11.)

### D.    The First Amended Complaint

The FAC alleges that the Onkyo Defendants directly infringe "at least Claim 6" of the '421 Patent "[b]y making, using, testing importing, offering for sale, and/or selling products" which comply with "the 802.11b and/or 802.11g standard." (D.I. 8 ¶¶ 63, 85.) The FAC alleges that "[t]he mandatory sections of the 802.11b and/or g standard require the elements required by certain claims of the '421 Patent" and products "necessarily infringe the '421 Patent", "[b]y complying with the 802.11b and/or 802.11g standard." (*Id*. ¶ 63.) The FAC also alleges that the Onkyo Defendants "indirectly infringes the '421 Patent by actively inducing infringement under 35 U.S.C. § 271(b)." (*Id*. ¶ 86.)

## IV.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

When evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 306 (3d Cir. 2007) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "[t]he court is not obligated to accept as true bald assertions, unsupported conclusions and unwarranted inferences, or allegations that are self-evidently false. *SoftView LLC v. Apple Inc.*, No. 10-389-LPS, 2012 U.S. Dist. LEXIS 104677, at *8-9 (D. Del. July 26, 2012) (internal citations omitted). While a complaint need not contain detailed factual allegations, it "must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Because Section 101 of the Patent Act raises an issue of law, a court may decide the issue of patent eligibility on a motion to dismiss. The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097–98 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion.") (internal quotation omitted).

"[E]valuation of a patent claim's subject matter eligibility under § 101 can proceed even before a formal claim construction." *Genetic Techs. Ltd.*, 818 F.3d at 1374. "[C]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Id.* (citing *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014)).

In this case, the '421 Patent's only asserted claim, Claim 6, is directed to nothing more than the abstract concept of manipulating signals using mathematical formulas. Dismissal for patent ineligibility is warranted at this stage because there are no claim construction issues or disputes about subsidiary facts that impact the eligibility analysis.

## B.      Section 101 Patent Eligibility

Section 101 defines patent-eligible subject matter. 35 U.S.C. § 101. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or

composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." *Id*.

There are limitations on patent-eligible subject matter.  In construing Section 101, the Supreme Court has held that claims covering "[l]aws of nature, natural phenomena, and abstract ideas" are not eligible for patent protection.  *Alice*, 573 U.S. at 216.  The purpose behind the exceptions is to protect the "basic tools of scientific and technological work."  *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012).

These exceptions require consideration, however.  "[A] process is not unpatentable simply because it contains a law of nature or a mathematical algorithm," and "an application of law of nature or mathematical formula to a known structure or process may well be deserving of patent protection."  *Id*.  However, "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'"  *Id*. at 72.  The "abstract ideas" category embodies "'the longstanding rule that '[a]n idea of itself is not patentable.''"  *Alice*, 573 U.S. at 218 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).  Under *Alice*, courts apply a two-step framework to determine whether a claim is directed to eligible subject matter.

### 1.    *Alice* Test

A court must first determine whether the claim is "directed to" a patent-ineligible concept such as an abstract idea.  *Alice*, 573 U.S. at 217.  If so, the claim is patent-eligible only if its elements, considered "individually and as an ordered combination" add enough to "transform the nature of the claim into a patent-eligible application."  *Id.* (internal quotations omitted).  In other words, the claim must contain an "inventive concept"— "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Id.* at 217-18 (quoting *Mayo*, 566 U.S. at 73 (2012)).

6

"A claim that recites an abstract idea must include 'additional features' to ensure 'that the [claim] is more than a drafting effort designed to monopolize the [abstract idea].'" *Id*. at 221 (alterations in original) (quoting *Mayo*, 566 U.S. at 72). "[S]imply appending conventional steps, specified at a high level of generality, to . . . abstract ideas cannot make those . . . ideas patentable." *Mayo*, 566 U.S. at 82. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Alice*, 573 U.S. at 222 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610-11 (2010)).

## V.     ARGUMENT

### A.     Claim 6 of the '421 Patent Is Patent-Ineligible

The claimed method is directed to the abstract idea of detecting a DSSS carrier frequency by performing three mathematical operations: subtracting, correlating and identifying. These claimed steps cover any possible way of performing the described mathematical processes and not any particular implementation. To this abstract idea the claims add nothing— there is no technology or implementation that is patentable under an *Alice* analysis. The claims are therefore invalid under 35 U.S.C. §101.

#### 1.     *Alice* Step One: Claim 6 of the '421 Patent Is Directed to an Abstract Idea -- Mathematical Relationships

Claim 6 of the '421 Patent fails the first step of the *Alice* test because it is directed to an abstract idea, namely, mathematical relationships. Under *Alice*'s first step, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Two-Way Media Ltd. v. Comcast Cable Commc'ns. LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (internal quotation and citations omitted).

Courts have long recognized that mathematical formulas, regardless of whether or not they are known in the prior art, are a category of patent-ineligible abstract ideas. *Parker v. Flook*, 437 U.S. 584, 591 (1978); *Enfish, LLC v. Microsoft Corp*., 822 F.3d 1327, 1334 (Fed. Cir.

2016). Thus, claims drawn to the abstract idea of "organizing information through mathematical correlations" are patent-ineligible. *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (reasoning that the method defined in the patent-in-suit "claims an abstract idea because it describes the process of organizing information through mathematical correlations and is not tied to a specific structure or machine").

Here, Claim 6, a method for detecting the carrier frequency of a direct-sequence, spread-spectrum ("DSSS") signal, is an abstract idea because it recites a method of receiving and processing electronic information that involves nothing more than manipulating existing information (i.e., an electromagnetic signal) with mathematical algorithms (i.e., frequency inversions and correlations) to generate new information. Simply "reciting . . . data manipulation steps," without additional limitations, merely constitutes an abstract idea. *Intellectual Ventures I LLC v. Capital One Fin. Corp.,* 850 F.3d 1332, 1340 (Fed. Cir. 2017).

### a.    Claim 6 Recites Abstract Mathematical Correlations

In *Digitech*, the Federal Circuit held that method claims "describ[ing] a process of organizing information through mathematical correlations" which were "not tied to a specific structure or machine" were directed to a patent-ineligible abstract idea. 758 F.3d at 1350. A method like that of Claim 6 "whereby a user starts with data, codes that data using 'at least one multiplication operation,' and ends with a new form of data," is a patent-ineligible abstract idea. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017). Each step of Claim 6 recites nothing more than mathematical formulas.

Claim 6 first recites "subtracting the DSSS signal from a signal having a higher frequency than an [sic] frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion." This step of Claim 6 is simply the abstract idea of combining the DSSS signal of interest with another signal having a known frequency to produce "difference frequencies." ('421 Patent,

col. 2, ll. 31-41.) The specification of the '421 Patent states that a "difference frequency is a frequency-inverted version of the original DSSS signal." (*Id.*)

The specification adds that determining the "difference frequency" of a DSSS signal is simply performed by applying a well-known mathematical function for "frequency inverting" a DSSS signal. "Let the original DSSS signal be f(t)cos $\omega_1$ t, where $\omega_1$ is the suppressed [i.e., unknown] carrier angular frequency and f(t) is the PSK spreading function having values ±1." (*Id.* at col. 2, ll. 48-50.) "If the local oscillator angular frequency is $\omega_2$, then the inverted signal is f(t)cos ($\omega_2 - \omega_1$) t." (*Id.* at col. 2, ll. 50-52.)  Because the "difference frequency is a frequency-inverted version of the original DSSS signal," the difference frequency is ***mathematically represented*** as f(t)cos ($\omega_2 - \omega_1$) t.  (*Id.* at col. 2, ll. 31-41.)

The process of subtracting a DSSS signal to produce difference frequencies, as explained above, recites nothing more than the information resulting from the application of a well-known mathematical formula.  In *Two-Way Media*, the Federal Circuit found that the functional results of "converting," "routing," and "controlling" failed to sufficiently describe the manipulation of data in a non-abstract way. *Two-Way Media,* 874 F.3d at 1337-38.  Likewise, the functional result of "subtracting" two signals, as recited in the first step of Claim 6, fails to describe the manipulation of information (*i.e.* an electromagnetic signal) in a non-abstract way.

The second step of Claim 6 recites "correlating the inverted and non-inverted DSSS signals at substantially zero relative time delay." ('421 Patent, col. 4, ll. 40-41.) The specification of the '421 Patent demonstrates that this step merely describes applying another well-known mathematical correlation to a DSSS signal.  In particular, the specification describes "multipl[ying] the difference frequency . . . with the time-delayed [DSSS signal of interest] . . . to produce the [beat frequency] signal." (*Id.* at col. 2, ll. 41-43.) The specification describes this step as the mathematical result

(M$_o$) of multiplying the original DSSS signal of interest (f(t)cos $\omega_1$ t) with the inverted form resulting from the "subtraction step" described above:

$$M_o[\ f(t)cos\ \omega_1\ t\ ] \times [\ f(t)cos\ (\omega_2\text{-}\omega_1)t\ ]$$

(*Id.* at col. 2, ll. 52-53.)

The specification describes simple math used to simplify this equation. '421 Patent, col. 2, ll. 55-57. The inventor defined his invention as applying to "binary phase shift keying (PSK)," where "f(t) is the PSK spreading function having values ±1." (*Id.* at col. 1, ll. 13-15, col. 2, ll. 49-50.) Because f(t) is limited to the "binary" values of -1 or 1, $[f(t)]^2$ must always equal 1. When the $[f(t)]^2$ term is thus eliminated (because it always equals 1), the equation "reduces to a pure sine wave beat frequency signal cos($\omega_2$-2$\omega_1$)t, ... since $[f(t)]^2$ =1, f(t) having ±1 values only." (*Id.* at col. 2, ll. 55-57.)

The third and final step of Claim 6 recites "identifying the said carrier frequency from the correlation signal."  But the specification of the '421 Patent makes clear that this is a simple result of the mathematical formulas described above.  More specifically, the specification explains that the "local oscillator frequency $\omega_2$ is known . . . the carrier frequency $\omega_1$ may be determined from the beat frequency ($\omega_2$-2$\omega_1$)."  (*Id.* at col. 2, ll. 57-59.)  Therefore, the third step of Claim 6 recites nothing more than the use of simple math to solve for the only unknown variable – i.e., the unknown carrier frequency *$\omega_1$*.  In the same way that "monitoring" or "reciting" data is an abstract idea, so too is simply "identifying" data.  *Two-Way Media Ltd.*, 874 F.3d 1329, 1337-38 ("'monitoring,' and 'accumulating records,' does not sufficiently describe how to achieve these results in a non-abstract way") (citing *Elec. Power Grp., LLC v. Alstom SA*, 830 F.3d 1350, 1351 (Fed. Cir. 2016) (finding the challenged claims were directed to systems and methods for achieving real-time performance monitoring of an electric power grid)).

10

**b.     Claim 6 Is Abstract Because Steps May Be Performed Mentally or on Pen and Paper**

Claim 6 of the '421 Patent is also abstract because a human being could perform the steps of each method claim mentally or with pen and paper.  "[A] method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101." *CyberSource Corp. v. Retail Decisions, Inc*., 654 F.3d 1366, 1373 (Fed. Cir. 2011).  Methods that can be performed "by a human using a pen and paper" are just as abstract as those that can be performed mentally.  *Id*. at 1372; *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015); *Intellectual Ventures I LLC v. Symantec Corp*., 838 F.3d 1307, 1317 (Fed Cir. 2016) (finding that claims "directed to human-practicable concepts" is a "useful" indication that they are abstract), *en banc reh'g denied*, No. 15-1769 (Fed. Cir. Jan. 11, 2017).

**2.     *Alice* Step Two: Claim 6 of the '421 Patent Adds Nothing of Patentable Significance**

"To save a patent at step two, an inventive concept *must be evident in the claims*." *RecogniCorp*, 855 F.3d at 1327 (emphasis added); *Two-Way Media Ltd*., 874 F.3d at 1338-39 ("The main problem that [plaintiff] cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept.") (emphasis in original).  Here, Claim 6 does not recite any elements that provide the "significantly more" required to transform it into a patent-eligible application of the abstract idea.  In fact, Claim 6 does not include any tangible elements other than the requirement that the steps be performed on electromagnetic signals, which the Federal Circuit has held are merely physical embodiments of data and not patent eligible.  *Digitech*, 758 F.3d at 1350 (quoting *In re Nuijten*, 500 F.3d 1346, 1351, 1353, 1357 (Fed. Cir. 2007)).

In *Digitech*, the Federal Circuit held that the claimed method was patent-ineligible because it involved "taking two data sets and combining them into a single data set," which amounted to

nothing more than "manipulate[ing] existing information to generate additional information." 758 F.3d at 1351. Because "nothing in the claim language expressly tie[d] the [claimed] method to an image processor" or any other specific structure or machine, the Federal Circuit held that it "need not decide whether tying the method to an image processor would lead us to conclude that the claims are directed to patent eligible subject matter in accordance with the Supreme Court's *Mayo* test." *Id*. (citing *Alice*, 573 U.S. at 226).

Nor does Claim 6 recite anything that transforms a particular article into a different state or thing. The '421 Patent specification does describe certain tangible elements.[2] However, these tangible devices are not recited in Claim 6. Accordingly, the Court need not decide the hypothetical question of whether tying the abstract idea of Claim 6 to such devices would support a conclusion that the method of Claim 6 is directed to patent-eligible subject matter.

### B.    Castlemorton's Direct Infringement Claim Is Not Plausible

Dismissal pursuant to Rule 12(b)(6) is warranted as the FAC failed to state a claim for direct infringement as a matter of law.

Castlemorton's bald assertion that the accused products "***necessarily infringe*** the '421 Patent" because they "***comply[] with the 802.11b and/or 802.11g standard***" is insufficient to plausibly plead infringement (D.I. 8 ¶ 63 (emphasis added).)   Courts in this District have recognized that simply alleging that a defendant complies with an industry standard is insufficient to plead patent infringement. *See SuperInterconnect Techs. LLC v. HP Inc*., No. 19-0169-CFC, 2019 U.S. Dist. LEXIS 217315, at *5 (D. Del. Dec. 18, 2019) (dismissing complaint in which no

---

[2] Examples of tangible elements in the patent specification include: the use of an oscillator to generate a signal having a "frequency . . . higher than the largest frequency in the DSSS signal of interest," ('421 Patent, col. 2, ll. 31-41); a "multiplier [that] multiplies the difference frequency . . . with the time-delayed signal [of interest] ... to produce the [beat frequency] signal (*id*. at col. 2, ll. 41-47); and "a frequency meter or other conventional means" to detect the "DSSS carrier frequency," (*id*. at col. 3, ll. 3-6.)

attempt to connect an industry standard or the accused product to elements of the asserted claims);

*Modern Telecom Sys., LLC v. TCL Corp.*, No. 17-583-LPS-CJB, 2017 U.S. Dist. LEXIS 209717,

at *5-6 (D. Del. Dec. 21, 2017) ("Plaintiff must have some basis to believe that compliance with

certain portions of the Wi-Fi Standard require the practice of each of the limitations of claim [at

issue]. . . .").

Moreover, Castlemorton's "***necessarily infringe***" argument fails on its face --

Castlemorton itself stated in the FAC that the accused products are also capable to function in a

non-infringing manner by performing in compliance with ***other*** IEEE 802.11 wireless standards,

such as IEEE 802.11 n or IEEE 802.11 ac.  (D.I. 8 ¶¶ 57, 59.)  Reproduction of a portion of

operating instruction and instruction manual of the accused products in the FAC unequivocally

shows that the accused products can be used in compliance with these ***other*** IEEE 802.11

wireless standards.  (*Id.*)  Castlemorton failed to plead a single fact supporting that the accused

products must *always* be used in compliance with the old and lower-speed IEEE 802.11 b or

802.11 g standard in spite of its capability to function in compliance with more recent and

higher-speed 802.11 standards.  Since the accused products can function in a non-infringing

manner, Castlemorton's allegation that the accused products "***necessary infringe***" Claim 6 fails.

In addition, the Onkyo Defendants' ***selling or offering for sale*** the accused products is

not infringing conduct as a matter of law.  Castlemorton alleges that the Onkyo Defendants

directly infringe Claim 6 "[b]y making, using, testing, importing, offering for sale, and/or

selling products and services for identifying a carrier frequency from a correlation signal".  (D.I.

8 ¶ 85.)  However, the Onkyo Defendants, as distributors of consumer electronics, are not

involved in "making, using, testing" accused products (Akiyama Decl. ¶¶ 3, 8.)   The law is

clear that the offering for sale or sale of equipment used to perform a process is not a sale of the

process within the meaning of 35 U.S.C. § 271(a).  *Joy Techs., Inc. v. Flakt, Inc*., 6 F.3d 770,

13

773 (Fed. Cir. 1993); *Standard Havens Prods., Inc. v. Gencor Indus., Inc*., 953 F.2d 1360, 1374

(Fed. Cir. 1991) (explaining that method claims of a patent are not directly infringed by the

mere sale of an apparatus capable of performing the claimed process); *Ormco Corp. v. Align*

*Tech., Inc*., 463 F.3d 1299, 1311 (Fed. Cir. 2006) ("Method claims are only infringed when the

claimed process is performed, not by the sale of an apparatus that is capable of infringing use.");

*E.I. Du Pont De Nemours & Co. v. Heraeus Holding GMBH,* No. 11-773-SLR-CJB, 2012 U.S.

Dist. LEXIS 140037, at *61 (D. Del. Sept. 28, 2012) ("[D]irect infringement of method claims .

. . occurs only when the claimed method itself is made used, sold, or offered for sale. A method

claim is not infringed when a component used to practice the claimed method is sold.")

Accordingly, the Defendants' offer for sale and sale of the accused products cannot constitute

direct infringement.

Furthermore, Castlemorton's direct infringement allegation fails to allege how the

accused products, if used in a manner to perform IEEE 802.11 b or 802.11 g standard, perform

all ***three steps*** covered in Clam 6 of the '421 Patent.  The only mention in the FAC regarding

the Onkyo Defendants in connection with the first "subtracting" step is:

> The Onkyo '421 Products perform the step of subtracting the spread spectrum signal
> from a signal with a higher frequency than the DSSS signal spectrum. For example, the
> Onkyo '421 Products contain functionality for a processing gain of at least 10 dB. This
> is performed by the Onkyo '421 Products by chipping the baseband signal at 11 MHz
> with an 11-chip code.

(D.I. 8 ¶ 76.)  But Castlemorton fails to state a basis for its allegation that the Onkyo

Defendants' products subtract signals of any kind.  (*Id*.  ¶¶ 54-91.)  Nor does the FAC state a

basis for its contention that the accused products "contain functionality for processing gain,"

that the accused products "chip[] the baseband signal," or how any of this relates to the

subtracting step of Claim 6.  (*Id*.  ¶ 76.)  The FAC likewise fails to state how any accused

14

product performs either the second "correlating" step (*see id*. ¶¶ 73, 79, 80, 81) or the third

"identifying" step.  (*See id*. ¶¶ 70, 81, 82.)

Thus, in all aspects, the FAC fails to state a claim for direct infringement "that is

plausible on its face" and should be dismissed.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550

U.S. at 570); *see also SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017)

(granting defendant's motion to dismiss plaintiff's direct infringement claims and noting that a

plaintiff "ha[s] to write a complaint . . . that makes it plausible to think a defendant has infringed

at least one claim of any asserted patent").

### C.    Castlemorton's Inducement Allegations Are a Formulaic Recitation of the Elements of a Cause of Action

Castlemorton's inducement allegations are devoid of any facts, do not provide the

Onkyo Defendants with fair notice of the grounds upon which Castlemorton's inducement claim

rests, and does not allow for any reasonable inferences to be drawn in Castlemorton's favor.

"For an allegation of induced infringement to survive a motion to dismiss, a complaint

must plead facts plausibly showing that the accused infringer specifically intended [another

party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement."

*Bos. Scientific Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 491 (D. Del. 2019) (quoting *Lifetime

Indus., Inc. v. Trim-Lok, Inc*., 869 F.3d 1372, 1379 (Fed. Cir. 2017)) (internal quotation

omitted).  "A plaintiff must allege facts that support the belief that the defendant had knowledge

not only of the existence of the patent-in-suit, but also, that the acts it induced would infringe

that patent."  *IP Commc'n Solutions, LLC v. Viber Media (USA) Inc*., No. 16-134-GMS, 2017

U.S. Dist. LEXIS 51770, at *9 (D. Del. Apr. 5, 2017) (citing *Commil USA, LLC v. Cisco Sys.,

Inc*., 135 S. Ct. 1920 (2015).  "[M]ere knowledge of infringing potential or of actual infringing

uses would not be enough . . . to subject [a defendant] to liability.  Nor would ordinary acts

incident to product distribution, such as offering customers technical support or product update, support liability in themselves." *Nexeon Ltd. v. Eaglepicher Techs., LLC*, No. 15-955-RGA-MPT, 2016 U.S. Dist. LEXIS 96995, at *14 (D. Del. July 26, 2016) (quoting *MGM Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 937 (2005)).

Castlemorton pleads legal conclusions, and such conclusory statements fail to allege sufficient facts to establish a plausible claim of induced infringement.  The crux of Castlemorton's allegations is that the Onkyo Defendants "knew of the '421 Patent and knew of its infringement, including by way of this lawsuit" (D.I. 8 ¶¶ 87, 88); that they "intended to induce Patent infringement . . . and had knowledge that the inducing acts would cause infringement or was willfully blind" (*id.*  ¶ 89); and that they "performed the acts that constitute induced infringement . . . with knowledge that the induced acts would constitute infringement. . . .  "  (*Id.*).  As this Court has held, such "formulaic recitation of the elements of a cause of action will not do."  *Pragmatus AV, LLC v. TangoMe, Inc.*, No. 11-1092-LPS-CJB, 2013 U.S. Dist. LEXIS 19075, at *5 (D. Del. Feb. 13, 2013) (quoting *Twombly*, 550 U.S. at 555).  Rather, Castlemorton must plead "factual content that allows the court to draw the reasonable inference" that the Onkyo Defendants are each liable for infringement.  *Iqbal*, 556 U.S. at 678.

The FAC unequivocally shows that accused products can be used in a non-infringing manner – i.e., in a manner in compliance with IEEE 802.11 n or 802.11 ac standard.  (D.I. 8 ¶¶ 57, 59).  The FAC is devoid, however, of any facts indicating that the Onkyo Defendants specifically intended their customers to use the accused products at old and lower-speed IEEE 802.11 b or 802.11 g standards rather than more recent and higher-speed IEEE 802.11 n or 802.11 ac.

The deficiencies of Castlemorton's inducement allegations are confirmed by comparison to the four other complaints filed by Castlemorton in this District.  Specifically, the inducement

allegation contained in **each of Castlemorton's five complaints are identical** except for the list of manuals in the footnote[3].  (*See* No. 1:20:-cv-00057, D.I. 8 ¶¶ 86-89; No. 1:20-cv-00058, D.I. 1 ¶¶ 84-86; No. 1:20-cv-00059, D.I. 1 ¶¶ 85-87; No. 1:20-cv-00060, D.I. 1 ¶¶ 84-86; No. 1:20-cv-00130, D.I. 1 ¶¶ 92-94.)

The notion that six different parties induced infringement of Claim 6 of the '421 Patent in **exactly the same way** is not plausible, and simply confirms that Castlemorton made no attempt to investigate its inducement claims.

D.    **If Sustained, Castlemorton's Inducement Claim Should Be Limited to Post-Suit Activities**

Claims for induced infringement require, inter alia, "knowledge of the existence of the patent that is [allegedly] infringed" as well as "knowledge that the induced acts [at issue] constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 765-66 (2011).  At the pleading stage, a plaintiff must allege facts allowing the reasonable inference that the defendant had knowledge of the patent-in-suit in the key time period, and that its products infringed that patent. *See Monec Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 229 (D. Del. 2012).

With respect to the knowledge element, the FAC alleges only that "Defendant Pioneer & Onkyo U.S.A. Corporation has had knowledge of the '421 Patent since at least service of the original Complaint in this matter on January 16, 2020 and on information and belief, Defendant Pioneer & Onkyo U.S.A. Corporation knew of its infringement, including by way of this lawsuit;" and that "Defendant Onkyo U.S.A. Corporation has had knowledge of the '421 Patent since at least service of this Amended Complaint or shortly thereafter, and on information and

---

[3] The Onkyo Defendants are not authors of these manuals cited in the FAC.  Product manuals are authored and provided by manufacturer-supplier of the products (Akiyama Decl. ¶ 9.)

belief, [Defendant Onkyo U.S.A. Corporation] knew of the '421 Patent and knew of its infringement, including by way of this lawsuit." (D.I. 8 ¶¶ 87, 88.) Castlemorton does not specifically allege that P&O USA or Onkyo USA had knowledge of the '421 Patent *at the time they were committing the allegedly infringing activities*. As such, Castlemorton's inducement claim is deficient and must be dismissed.

At the very least, Castlemorton's inducement claim should be limited to the Onkyo Defendants' post-filing activities (i.e., acts occurring after January 16, 2020 for P&O USA, and acts occurring after March 3, 2020 for Onkyo USA). *See Collabo Innovations, Inc. v. OmniVision Techs., Inc.*, No. 16-197-SLR-SRF, 2017 U.S. Dist. LEXIS 10199, at *23-24 (D. Del. Jan. 25, 2017) (recommending that plaintiff's causes of action for indirect infringement be limited to conduct occurring after the filing of the initial complaint).

## VI.      CONCLUSION

For the reasons set forth above, Onkyo Defendants respectfully request that the Court dismiss the FAC in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: April 16, 2020

<table>
<tr><td></td><td>  /s/ Kenneth L. Dorsney</td></tr>
<tr><td></td><td>Kenneth L. Dorsney (I.D. #3726)</td></tr>
<tr><td>Anthony F. Lo Cicero</td><td>MORRIS JAMES LLP</td></tr>
<tr><td>(*Admitted Pro Hac Vice*)</td><td>500 Delaware Avenue, Suite 1500</td></tr>
<tr><td>Mark Berkowitz (*Admitted Pro Hac Vice*)</td><td>Wilmington, DE 19801</td></tr>
<tr><td>Marc J. Jason (*Admitted Pro Hac Vice*)</td><td>(302) 888-6800</td></tr>
<tr><td>AMSTER ROTHSTEIN & EBENSTEIN LLP</td><td>kdorsney@morrisjames.com</td></tr>
<tr><td>90 Park Avenue</td><td></td></tr>
<tr><td>New York, NY 10016</td><td></td></tr>
<tr><td>212.336.8000</td><td>**ATTORNEYS FOR DEFENDANTS**</td></tr>
<tr><td>alocicero@arelaw.com</td><td>**PIONEER & ONKYO U.S.A.**</td></tr>
<tr><td>mberkowitz@arelaw.com</td><td>**CORPORATION AND**</td></tr>
<tr><td>mjason@arelaw.com</td><td>**ONKYO U.S.A. CORPORATION**</td></tr>
</table>