# N THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CASTLEMORTON WIRELESS, LLC,

    *Plaintiff,*

    v.

PIONEER & ONKYO U.S.A. CORPORATION
AND ONKYO U.S.A. CORPORATION,

    *Defendants*

Civil Action No. 1:20-cv-00057-RGA

**JURY TRIAL DEMANDED**

---

## PLAINTIFF CASTLEMORTON WIRELESS, LLC'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Dated:  April 30, 2020

OF COUNSEL:

Dorian S. Berger
Daniel P. Hipskind
Eric B. Hanson
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
(323) 886-3430
dsb@bergerhipskind.com
dph@bergerhipskind.com
ebh@bergerhipskind.com

BAYARD, P.A.

Stephen B. Brauerman (#4952)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com

*Attorneys for Plaintiff*
*Castlemorton Wireless, LLC*

I.  I<small>NTRODUCTION</small> ................................................................................................. 1

II. N<small>ATURE AND</small> S<small>TAGE OF</small> P<small>ROCEEDINGS</small> ................................................... 2

III. S<small>UMMARY OF</small> A<small>RGUMENT</small> ..................................................................... 2

IV. T<small>HE</small> '421 P<small>ATENT</small> ........................................................................... 3

V.  O<small>NKYO</small> F<small>AILS</small> T<small>O</small> S<small>HOW</small> T<small>HE</small> C<small>LAIMS</small> O<small>F</small> T<small>HE</small> '421 P<small>ATENT</small> A<small>RE</small> I<small>NVALID</small> U<small>NDER</small> § 101 ..... 4

    A.  *Alice* Step One: The '421 Patent Is Directed To Patent-Eligible Subject Matter ......... 4

        1.  The '421 Patent Is Directed To An Improvement In Telecommunications Equipment Functionality, Not An Abstract Idea. .................................................. 6

            a)  The Patent Specification And Claim Language Confirms The Claims Are Directed To An Improvement In Detecting A DSSS Carrier Frequency. ....................................................................... 8

            b)  As Understood In 1983, The '421 Patent Would Be Viewed As A Specific Improvement To DSSS Carrier Signal Identification. ................... 9

        2.  Onkyo Mischaracterizes The Nature Of Claim 6 In An Effort To Apply Inapposite Caselaw. ................................................................................. 9

            a)  Onkyo's Proposed Abstract Idea Mischaracterizes Claim 6. ..................... 11

            b)  The '421 Patent Is Directed To A Physical Task, Not An Abstract Idea. ....................................................................... 12

    B.  *Alice* Step Two: Claim 6 Contains An Inventive Concept. ....................................... 13

        1.  The Claimed Invention Involves Unconventional Technological Solutions Under Step Two. .................................................................... 13

        2.  A Preemption Analysis Confirms That The '421 Patent Is Not Abstract. .......... 14

    C.  Claim 6 Of The '421 Patent Is Not Representative Of All Claims. ............................ 15

    D.  Onkyo's Patent Eligibility Argument Should Be Denied As Premature. ................... 16

VI. C<small>ASTLEMORTON</small> H<small>AS</small> S<small>UFFICIENTLY</small> P<small>LED</small> D<small>IRECT</small> I<small>NFRINGEMENT</small> ..................................... 16

VII. C<small>ASTLEMORTON</small> P<small>ROPERLY</small> P<small>LEADS</small> I<small>NDUCED</small> I<small>NFRINGEMENT</small>. .......................................... 19

VIII. C<small>ONCLUSION</small> ..................................................................................... 20

CASES

*2-Way Computing, Inc. v. Grandstream Networks, Inc.*,
  2016 U.S. Dist. LEXIS 144080 (D. Nev. Oct. 18, 2016) ................................. 13

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ................................................................................. *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016) ................................................................... 14

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015) ................................................................... 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................... 3, 17

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ............................................................... 5, 14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................... 3, 17

*Berkheimer v. HP, Inc.*,
  890 F.3d 1369 (Fed. Cir. 2018) ..................................................................... 3

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ................................................................................... 11

*Blackberry Ltd. v. Facebook, Inc.*,
  2018 U.S. Dist. LEXIS 221047 (C.D. Cal. Aug. 2, 2018) ................................ 5

*Broadcom Corp. v. Sony Corp.*,
  2016 U.S. Dist. LEXIS 189457 (C.D. Cal. Oct. 5, 2016) ................................ 7

*Card Verification Sols., LLC v. Citigroup Inc.*,
  2014 U.S. Dist. LEXIS 137577 (N.D. Ill. Sep. 29, 2014) ................................ 8

*Collabo Innovations, Inc. v. OmniVision Techs., Inc.*,
  2017 U.S. Dist. LEXIS 10199 (D. Del. Jan. 25, 2017) ................................... 20

*Comcast Cable Communs., LLC v. Sprint Communs. Co.*,
  203 F. Supp. 3d 499 (E.D. Pa. 2016) ............................................................ 8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014) ................................................................... 15

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) ............................................................. 13, 14

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ................................................................................. 1, 6

*Digitech Image Techs., LLC v. Elecs. For Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014)......................................................... 10, 12

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
888 F.3d 1256 (Fed. Cir. 2018)................................................................ 17

*Egenera, Inc. v. Cisco Sys.*,
234 F. Supp. 3d 331 (D. Mass. 2017) ...................................................... 16

*Election Sys. & Software, LLC v. Smartmatic United States Corp.*,
2019 U.S. Dist. LEXIS 34738 (D. Del. Mar. 5, 2019) ............................. 17

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)........................................................ 5, 7, 8, 11

*Express Mobile, Inc. v. DreamHost LLC*,
2019 U.S. Dist. LEXIS 101468 (D. Del. June 18, 2019)............................ 16

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018)................................................................. 5

*Fitbit, Inc. v. AliphCom*,
233 F. Supp. 3d 799 (N.D. Cal. Feb. 9, 2017) ........................................ 7

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
2014 U.S. Dist. LEXIS 52564 (N.D. Cal. Apr. 14, 2014) ........................ 15

*Grayson v. Mayview State Hosp.*,
293 F.3d 103 (3d Cir. 2002).................................................................... 20

*Huawei Techs. Co., v. Samsung Elecs. Co.*,
2016 U.S. Dist. LEXIS 162039 (N.D. Cal. Nov. 21, 2016)....................... 7

*Hybrid Audio, LLC v. ASUS Computer Int'l*,
2019 U.S. Dist. LEXIS 115742 (N.D. Cal. July 11, 2019)..................... 7, 10

*In re Nuijten*,
500 F.3d 1346 (Fed. Cir. 2007).............................................................. 12

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016).............................................................. 14

*Lifetime Indus. Inc. v. Trim-Lok Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)................................................................ 2

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995).................................................................... 8

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016).......................................................... 4, 13

*Mobile Telcoms. Techs., LLC v. Leap Wireless Int'l, Inc.*,
2015 U.S. Dist. LEXIS 127265 (E.D. Tex. Sep. 23, 2015) ........................ 7

*Modern Telecom Sys., LLC v. TCL Corp.*,
2017 U.S. Dist. LEXIS 209717 (D. Del. 2017) ....................................... 18

*MONEC Holdings AG v. Motorolola Mobility, Inc.*,
   897 F. Supp. 2d 225 (D. Del. 2012)......................................................... 20

*Nexeon Ltd. v. Eaglepircher Techs., LLC*
   2016 U.S. Dist. LEXIS 96995 (D. Del. July 26, 2016) ............................... 19

*Pacific Biosciences of California, Inc., v. Oxford Nanopore Technologies, Inc.*,
   Case No. 17-cv-275-RGA, Dkt. No. 23 (November 9, 2017) ....................... 16

*Parker v. Flook*,
   437 U.S. 584 (1978)..................................................................................... 9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..................................................................... 8

*Pragmatus AV, LLC v. TangoMe, Inc.*
   2013 U.S. Dist. LEXIS 19075 (D. Del. Feb. 13, 2013) ................................ 20

*Promos Techs., Inc. v. Samsung Elecs. Co.*,
   2018 U.S. Dist. LEXIS 186276 (D. Del. Oct. 31, 2018) ............................... 15

*Rapid Litig. Mgmt v. CellzDirect, Inc.*,
   827 F.3d 1042 (Fed. Cir. 2016)................................................................... 11

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d. 1322 (Fed. Cir. 2017)............................................................... 9, 10

*RICPI Communs. LLC v. JPS Interoperability Solutions, Inc.*,
   2019 U.S. Dist. LEXIS 43576 (D. Del. Mar. 18, 2019) ............................... 14

*Sentius Int'l, LLC v. Microsoft Corp.*
   78 F. Supp. 3d 967 (N.D. Cal. Jan. 23, 2015).............................................. 18

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.*,
   346 F.3d 1057 (Fed. Cir. 2013)................................................................... 15

*Stormborn Techs., LLC v. Topcon Positioning Sys.*,
   2020 U.S. Dist. LEXIS 47122 (N.D. Cal. Mar. 17, 2020)...................... 7, 10, 13

*Super Interconnect Techs. LLC v. HP Inc.*,
   2019 U.S. Dist. LEXIS 217315 (D. Del. Dec. 18, 2019)............................... 18

*Sycamore IP Holdings LLC v. AT&T Corp.*,
   294 F. Supp. 3d 620 (E.D. Tex. 2018) .......................................................... 8

*Telecomm Innovations, LLC v. Ricoh Co., Ltd.*,
   966 F. Supp. 2d 390 (D. Del. 2013).............................................................. 20

*Thales Visionix, Inc. v. United States*,
   850 F.3d 1343 (Fed. Cir. 2017)................................................................... 1, 6

*TQ Delta, LLC v. 2Wire, Inc.*,
   373 F. Supp. 3d 509 (D. Del. 2019)........................................................... 6, 10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)................................................................... 10

*Uniloc United States v. ADP, LLC*,
    772 Fed. Appx. 890 (Fed. Cir. 2019) ............................................................. 10

*Universal Elecs., Inc. v. Roku, Inc.*,
    2019 U.S. Dist. LEXIS 74623 (C.D. Cal. Mar. 5, 2019) ................................... 7

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017) ....................................................................... 11

## STATUTES

35 U.S.C. § 101 ........................................................................................... *passim*

35 U.S.C. § 102 ................................................................................................. 16

35 U.S.C. § 103 ................................................................................................. 16

35 U.S.C. § 282 ................................................................................................. 15

## RULES

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 2

# I.    INTRODUCTION

U.S. Patent No. 7,835,421 (the "'421 Patent") is directed to an improvement in telecommunications technology – a specific way of identifying a carrier frequency in a direct-sequence spread spectrum ("DSSS") signal. The '421 Patent's claims are the type routinely found patent eligible by the Federal Circuit and this Court: inventions rooted in technology directed to improving telecommunications systems.

The technological innovation claimed in the '421 Patent is directed to solving a problem specific to receivers of DSSS signals. DSSS signals are a specific type of spread spectrum signal where an input signal is modulated by a spreading code such that the signal is spread over a wider bandwidth to make jamming and interception more difficult. DSSS modulation has the effect of suppressing the carrier frequency, making it difficult for a receiver to demodulate the signal. The '421 Patent is directed to a particular technological solution to DSSS carrier signal suppression.

Onkyo's Motion[1] takes issue with Claim 6's utilization of mathematical principles in connection with the technological innovation providing a novel method of identifying suppressed carrier frequencies in DSSS signals. (D.I. 13 (hereinafter, "Motion") at 5-10.) However, the Supreme Court "explained that claims are patent eligible under § 101 'when a claim containing a mathematical formula implements or applies that formula in a structure or process which, when considered as a whole, is performing a function which the patent laws were designed to protect.'" *Thales Visionix, Inc. v. United States*, 850 F.3d 1343, 1347-48 (Fed. Cir. 2017) (quoting *Diamond v. Diehr*, 450 U.S. 175, 193 n.15 (1981)). Here, Claim 6 is directed to an improvement to wireless communications systems that utilize DSSS signals by reliably identifying the carrier frequency in the presence of signal noise. Claim 6 is not directed to an abstract mathematical formula.

---

[1] Defendants Pioneer & Onkyo U.S.A. Corporation and Onkyo U.S.A. Corporation are collectively referred to herein as "Onkyo."

Even if the Court were to find the '421 Patent is directed to an abstract idea, Onkyo's argument fails under step two of the *Alice* analysis. Onkyo falls short of meeting its burden of proving the claim elements of the '421 Patent were well-understood, routine, and conventional in January 1983—the priority date of the '421 Patent. Onkyo's Motion, therefore, should be denied.

Castlemorton's direct and induced infringement pleadings far exceed the requirement that a complaint need only "place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Lifetime Indus. Inc. v. Trim-Lok Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017). In an effort to support its 12(b)(6) motion Onkyo ignores the actual allegations in the FAC and mischaracterizes the standard for pleading direct and induced infringement.

## II.    NATURE AND STAGE OF PROCEEDINGS

Castlemorton filed the Complaint in this case against Pioneer Electronics (USA) Inc. and Pioneer & Onkyo U.S.A. Corporation on January 15, 2020. (D.I. 1.) After meeting and conferring with Defendants, on March 3, 2020, Castlemorton filed the First Amended Complaint (D.I. 8, "FAC") against Pioneer & Onkyo U.S.A. Corporation and Onkyo U.S.A. Corporation ("Onkyo"). Onkyo filed a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) on April 16, 2020. (D.I. 12, 13.) The Court has not yet entered a Scheduling Order in this case.

## III.    SUMMARY OF ARGUMENT

1.      Claim 6 of the '421 Patent satisfies Step One of the *Alice* analysis. Claim 6 is not directed to an "abstract idea;" it is directed to a specific and tangible improvement to telecommunications systems, disclosing a novel method of detecting suppressed carrier frequencies in DSSS signals.

2.      Claim 6 satisfies Step Two of the *Alice* analysis. Claim 6 solves a problem in the field—the need to determine suppressed carrier frequencies of DSSS signals—in a particular, technical way. This particular solution to the problem does not implicate preemption concerns.

3.      The Federal Circuit has cautioned against granting § 101 motions that involve disputed factual issues.[2]  This includes the question of what constitutes "conventional" technology or an inventive concept.[3]  Castlemorton's FAC, the '421 Patent, and the declaration of Dr. Wills and the exhibits attached thereto establish that that the '421 Patent claims a patentable improvement in how to identify a carrier frequency in a direct-sequence spread spectrum signal. What constitutes conventional technology in the field in 1983 or what the inventive concept is are, at a minimum, disputed, material questions of fact that alone warrant denying Onkyo's Motion.

4.      Castlemorton's allegations of direct and indirect infringement satisfy the *Iqbal/Twombly* standard.  The FAC pleads facts sufficient to put Onkyo on notice of the allegations against it and the grounds upon which those allegations rest.

## IV.    THE '421 PATENT

The technology claimed in the '421 Patent was invented by Geoffrey Bagley, a researcher at the United Kingdom's Ministry of Defence in its Royal Signals and Radar Establishment ("RSRE").  (D.I. 8, ¶¶ 2, 4.)  Mr. Bagley's work in the field of wireless communications was widely cited and recognized in the field.  (*Id.*, ¶ 6.)  The priority date for the '421 Patent is January 4, 1983.  (*Id.*, ¶ 36.)  The peculiarity of seeing an active patent covering an invention conceived over 37 years ago arises because of the groundbreaking nature and importance of the technology. Both the British and U.S. governments recognized the importance of this technology to national security and placed the application leading to the '421 Patent under a Secrecy Order.  (*Id.*, ¶¶ 3, 15.)  Secrecy Orders are reserved for an extremely small subset of patent applications—in the final year the application leading to the '421 Patent was under a Secrecy Order, the United States placed

---

[2] *See Berkheimer v. HP, Inc.*, 890 F.3d 1369 (Fed. Cir. 2018).

[3] *Id.* at 1369.

only 0.016% of patent applications under Secrecy Order. (*Id.*, ¶ 20.)

As time marched on while the '421 Patent's technology was kept secret, private industry eventually recognized advanced signal processing technologies originally developed for military and national security applications. Nearly a decade and a half after Geoffrey Bagley invented the carrier frequency detector technology covered by the '421 Patent—and while this technology was kept secret through Secrecy Orders—a collection of academics and industry representatives promulgated the IEEE 802.11b standard for wireless communications, which incorporated Mr. Bagley's groundbreaking carrier frequency identification technology. (*Id.*, ¶¶ 52, 55.)

## V. ONKYO FAILS TO SHOW THE CLAIMS OF THE '421 PATENT ARE INVALID UNDER § 101

Onkyo's argument that the '421 Patent is ineligible under § 101 fails because the claims are directed to a particularized technological solution that improves telecommunications equipment functionality — i.e., a particularized receiver to identify a carrier frequency in a DSSS signal. The claims of the '421 Patent describe specific technological ways (using signal frequency spectrum inversion and a correlation signal) to make this happen.

### A. *Alice* Step One: The '421 Patent Is Directed To Patent-Eligible Subject Matter

Onkyo must show the claims as a whole are "directed to a patent-ineligible concept" such as an abstract idea. *Alice*, 573 U.S. at 218. A claim that provides "a specific means or method that improves the relevant technology" is not an abstract idea. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).

Claim 6 is directed to a patentable method for detecting the carrier frequency of a DSSS signal. Claim 6 recites a specific and tangible improvement to telecommunications systems by processing DSSS signals to determine the carrier frequency. That is not an abstract idea, law of nature, or mathematical algorithm. This is not a case where the claims state an abstract idea "for which computers are invoked merely as a tool." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d

1299, 1303 (Fed. Cir. 2018) (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016)).  Nor is this a case where the "basic thrust might more easily be understood as directed to an abstract idea" so that analysis of the patent claims takes place at *Alice* step two.  *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016).

The invention claimed in the '421 Patent is directed to systems and a method for detecting a carrier frequency of a DSSS signal.  Claims 1-5 are means-plus-function system claims that identify the specific functionality performed by the architecture of the signal processing structures identified in the specification of the '421 Patent.  (*See* D.I. 8, Ex. A, 2:17-3:41; 3:43-4:33; Figs. 1-2, 4.)  Claim 6 claims a specific method of detecting a DSSS carrier frequency.  (*Id.*, 4:34-43.)  This particular claim requires that a DSSS signal is subtracted from a signal having a higher frequency than a frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion.  (*Id.*, 4:36-39.)  The '421 Patent teaches that "frequency inversion may be performed with a local oscillator, a frequency mixer and a filter providing a difference frequency between the oscillator and DSSS signals."  (*Id.*, 1:59-61.)  Claim 6 requires "correlating the inverted and non-inverted DSSS signals at substantially zero relative time delay."  (*Id.*, 4:40-41.)  The purpose of this correlation limitation is to "produce[] a beat frequency signal from which the required carrier frequency may be determined."  (*Id.*, 1:56-58.)

The determination of whether a patent is directed to an abstract idea is to be viewed through the "lens of a person of ordinary skill in the art at the time [the patent] was filed."  *See Blackberry Ltd. v. Facebook, Inc.*, 2018 U.S. Dist. LEXIS 221047, at *14 (C.D. Cal. Aug. 2, 2018).  For the '421 Patent, the determination of patent eligibility must be based on a person of ordinary skill in the art in 1983.  Onkyo makes no attempt to argue that its characterization of the '421 Patent is based on this standard.  In contrast, Castlemorton submits with this Opposition the Declaration of

Dr. Craig Wills ("Wills Decl.")[4] who undertook such an analysis and found the '421 Patent is directed to improving "a DSSS signal receiver," which is not an abstract idea. (*Id.*, ¶ 25.)

      1.     <u>The '421 Patent Is Directed To An Improvement In Telecommunications Equipment Functionality, Not An Abstract Idea.</u>

The limitations of Claim 6 include the concepts of signal frequency inversion and signal correlation, which are engineering concepts that utilize math. However, all electrical engineering concepts are based upon principals of physics and mathematics, and it is a bedrock principle of patent law that merely because there is a mathematical formula, computer algorithm, or natural law somewhere in a claim, that does not mean that the heart of the claim is directed to an abstract idea. *See Diamond v. Diehr,* 450 U.S. 175, 187 (1981) ("[A] claim drawn to subject matter otherwise statutory does not become nonstatutory simply because it uses a mathematical formula, computer program, or digital computer."); *Thales Visionix*, 850 F.3d at 1347-48 (finding claims patent eligible "when a claim containing a mathematical formula implements or applies that formula in a structure or process").

In *TQ Delta, LLC v. 2Wire, Inc.*, this Court faced arguments from a defendant "urg[ing] that several claim elements [were] 'purely mathematical' and that the claims as a whole merely apply the mathematical equation 'L = N*D/R'." 373 F. Supp. 3d 509, 520-21 (D. Del. 2019) (Andrews, J.). In rejecting the defendant's arguments, the Court explained:

> "[T]he plain focus of the claims is on an improvement to computer functionality itself," that is, a reduction in the delay of data transmission in DSL technology. . . . The claims are not directed to *any* use of the mathematical formulas disclosed in the specification but are specifically directed to minimizing delay on bonded transceivers with different data rates. . . . Here, the claims are directed to a specific improvement in how data transmission over DSL lines may be achieved.

---

[4] Dr. Wills references Datto, Inc.'s motion to dismiss at Paragraph 9 of his Declaration. This is a reference to the Opening Brief in support of Datto, Inc.'s Motion to Dismiss (D.I. 9), in related Case No. 1:20-cv-00058-RGA (D. Del.). Datto filed a motion advancing substantially similar arguments as Onkyo's present Motion.

*Id.* at 521 (quoting *Enfish*, 822 F.3d at 1336) (emphasis in original).

Similarly, in *Huawei Techs. Co., v. Samsung Elecs. Co.*, 2016 U.S. Dist. LEXIS 162039, at *8 (N.D. Cal. Nov. 21, 2016), the court found claims for "reduc[ing] signal interference when a mobile device connects to a cellular network" were patent-eligible despite relying on mathematical equations. That court observed that mathematical equations employed by the claims at issue had "no significance outside of decreasing interference between mobile devices." *Id.* at *27.

By offering an improved method of detecting such a carrier frequency, Claim 6 is directed to an improvement in telecommunications receivers. District courts around the country routinely uphold as patent eligible claims directed to specific improvements in how computers and networks operate. *See Stormborn Techs., LLC v. Topcon Positioning Sys.*, 2020 U.S. Dist. LEXIS 47122, at *11 (N.D. Cal. Mar. 17, 2020) (holding claims "directed towards a specific improvement in the way spread-spectrum communication systems operate" patent eligible); *Hybrid Audio, LLC v. ASUS Computer Int'l*, 2019 U.S. Dist. LEXIS 115742, at *10-11, *15 (N.D. Cal. July 11, 2019) (upholding as patent eligible claims, including a "signal processing method comprising . . . synthesizing a signal using a plurality of synthesis filter banks . . . ." because the claims are "directed to creating systems for compressing audio sound tracks to reduce the storage and bandwidth requirements") (internal quotation omitted); *Universal Elecs., Inc. v. Roku, Inc.*, 2019 U.S. Dist. LEXIS 74623, at *19-20 (C.D. Cal. Mar. 5, 2019) (finding a claim "directed to a specific method for connecting remote controls to appliances" patent eligible).[5]

---

[5] *See also Mobile Telcoms. Techs., LLC v. Leap Wireless Int'l, Inc.,* 2015 U.S. Dist. LEXIS 127265, at *8-9 (E.D. Tex. Sep. 23, 2015) (upholding a claim that "teaches a way of transmitting paging carriers in a bandlimited channel where the paging carriers are transmitted from the same location and are modulated with reference to two different frequencies . . . .") (quotations omitted); *Fitbit, Inc. v. AliphCom*, 233 F. Supp. 3d 799, 810 (N.D. Cal. Feb. 9, 2017) (upholding claims directed to "server-authenticated pairing of a portable monitoring device using tapping as validation"); *Broadcom Corp. v. Sony Corp.*, 2016 U.S. Dist. LEXIS 189457, at *12 (C.D. Cal. Oct. 5, 2016)

a)    The Patent Specification And Claim Language Confirms The Claims Are
Directed To An Improvement In Detecting A DSSS Carrier Frequency.

The '421 Patent's specification confirms that Claim 6 is limited to the unique task of

detecting DSSS carrier frequencies.  (*See* D.I. 8, Ex. A; *see also id.*, 1:8-9 ("The invention relates

to an electronic circuit for detection of direct-sequence, spread-spectrum signals . . . .").)  The

Federal Circuit has repeatedly held that "claims 'must be read in view of the specification, of which

they are a part.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*) (quoting

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*)); *see also*

*Enfish,* 822 F.3d at 1335 (claims must be "considered in light of the specification").

Here, the specification teaches the circuitry hardware used to perform the method of Claim

6.  (D.I. 8, Ex. A., 1:59-3:41 (identifying antennas, oscillators, etc.).)  "To invalidate the [patent-

in-suit] on the ground that it does not expressly require the use of a computer in its claims would

be to adopt an 'overly formalistic approach[] to subject-matter eligibility.'"  *Card Verification*

*Sols., LLC v. Citigroup Inc.*, 2014 U.S. Dist. LEXIS 137577, at *11 (N.D. Ill. Sep. 29, 2014)

(quoting *Alice,* 717 F.3d at 1281 (explaining that the patent-in-suit was "device agnostic," but

noting after reviewing the specification, "[a] plausible interpretation of the patent is that computing

devices . . . would be required to use the invention.").  Onkyo's statement that Claim 6 recites a

---

(finding claims covering "a method for generating an index value from a code-word for digital
video decoding" patentable despite the claims being "built upon mathematical formulas" because
the claims' "character as a whole" "are directed to improving digital video decoding"); *Comcast
Cable Communs., LLC v. Sprint Communs. Co.*, 203 F. Supp. 3d 499, 526 (E.D. Pa. 2016) ("[T]he
claims set out a method for achieving a specific goal—obtaining information about a wireless
terminal with a dynamic network address—by *applying* the abstract idea of matching identifiers
to retrieve information in the cellular network."); *Sycamore IP Holdings LLC v. AT&T Corp.*, 294
F. Supp. 3d 620, 652 (E.D. Tex. 2018) (Bryson, J.) ("[A] compression protocol is not
fundamentally different from other computer-driven programs that improve the accuracy, speed,
and security of communications such as error correction programs, encryption protocols, and
methods for synchronizing data, all of which have been held to survive section 101 challenges.").

method of "manipulating existing information (*i.e.*, electromagnetic signal) . . . with *mathematical algorithms*," is wrong. (Motion at 8 (emphasis added).) The electromagnetic signals are processed utilizing the circuitry hardware described in the specification. One cannot "manipulate" "electromagnetic signals" with math.

> b) As Understood In 1983, The '421 Patent Would Be Viewed As A Specific Improvement To DSSS Carrier Signal Identification.

In the early 1980s—when the '421 Patent was conceived—existing technology had difficulty properly identifying a DSSS carrier frequency from undesired signal noise. (D.I. 8, ¶¶ 44-45, 49; Ex. A, 1:17-18; Wills Decl. ¶¶ 25-32.) The '421 Patent overcame these challenges by developing a better way of utilizing signal processing components in a specific combination to reject noise and properly identify carrier frequencies. (D.I. 8, Ex. A, 2:29-3:10; Wills Decl. ¶ 37.)

One of ordinary skill in the art in 1983 would understand the '421 Patent claims to be directed to a technological solution (Wills Decl. ¶¶ 31, 34-37), to a problem specific in telecommunications equipment – DSSS signal receivers. DSSS signals have a suppressed carrier frequency making demodulation of the DSSS signal difficult where the specific carrier frequency is unknown to the receiver. (*Id.*, ¶¶ 25-30, 32.) In 1983, existing systems lacked a way to quickly identify a suppressed carrier frequency in a DSSS signal, hindering the functionality of the DSSS receiver. (*Id.*, ¶¶ 23, 32 (discussing DSSS signal receivers contemporaneous to the '421 Patent).)

> 2. Onkyo Mischaracterizes The Nature Of Claim 6 In An Effort To Apply Inapposite Caselaw.

Onkyo mischaracterizes Claim 6 in an attempt to shoehorn it into Federal Circuit holdings analyzing claims directed to the organization and analysis of information. (Motion at 8-10.)[6]

---

[6] Onkyo cites *RecogniCorp, LLC v. Nintendo Co.*, which considered a claim directed to "standard encoding and decoding" wherein the claim "displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, then reproduces the images based

Claim 6, however, is not directed merely to organizing, transmitting, or analyzing information or data manipulation; rather, it claims a patent-eligible process of learning unknown information (the carrier frequency) about a physical energy form (the electromagnetic DSSS signal) by taking that physical energy form as an input, processing the signal utilizing an unconventional arrangement of circuitry components (Wills Decl. ¶ 37), and identifying the carrier frequency of that signal. The method of Claim 6 improves the operation of telecommunications equipment by solving a problem prior art technology encountered, *i.e.*, being unable to reliably identify the carrier frequency of a DSSS signal from signal noise.

Claim 6 falls squarely into the category of cases like *TQ Delta*, *Huawei, Stormborn Technologies,* and *Hybrid Audio*. Claim 6 is directed to a specific method of improving telecommunications technology by detecting a carrier frequency of a DSSS signal by performing specific functions that are carried out by electronic circuitry in response to the circuit receiving a DSSS signal. (D.I. 8, Ex. A, 3:13-16, 4:34-43.) Unlike the claims in *RecogniCorp*, *Two-Way Media*, and *Digitech*, Claim 6 is patent eligible because it "claims a particular improvement in *how* this is done." *Uniloc United States v. ADP, LLC*, 772 Fed. Appx. 890, 897 (Fed. Cir. 2019) (the claims are patent eligible because "the patent claims a particular improvement in *how* this is done") (emphasis in original). The Federal Circuit has repeatedly held that claims directed to improving computer and network functionality are patent-eligible subject matter. *Visual Memory LLC v.*

on the codes." 855 F.3d. 1322, 1326 (Fed. Cir. 2017). Onkyo's Motion further cites *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329 (Fed. Cir. 2017), which found claims "directed to the abstract idea of (1) sending information, (2) directing the sent information, (3) monitoring the receipt of the sent information, and (4) accumulating records about receipt of the sent information" to be ineligible subject matter. 874 F.3d at 1337. Onkyo also cites *Digitech Image Techs., LLC v. Elecs. For Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014), which found the claims at issue covered "a collection of information" comprising "two sets of data that describe a device." 758 F.3d at 1349.

*NVIDIA Corp.*, 867 F.3d 1253, 1257 (Fed. Cir. 2017) (using categorical data storage in a specific way to improve computer functionality); *Enfish*, 822 F.3d at 1330 (claims were directed to "an innovative logical model for a computer database"); *Rapid Litig. Mgmt v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016) ("new and improved technique for producing a tangible and useful result, falls squarely outside those categories of inventions that are 'directed to' patent-ineligible concepts.").

      a)   Onkyo's Proposed Abstract Idea Mischaracterizes Claim 6.

Onkyo's argument hinges on mischaracterizing Claim 6. Onkyo wrongly describes the method of Claim 6 as "nothing more than manipulating existing information (*i.e.*, an electromagnetic signal) with mathematical algorithms (*i.e.*, frequency inversions and correlations) to generate new information." (Motion at 8.) Onkyo concedes the DSSS signal is an electromagnetic signal; however, Onkyo wrongly equates that physical energy form with "existing information" akin to information generated by the process of Claim 6 (the carrier frequency).

The language of Claim 6 requires "subtracting the DSSS signal from a signal having a higher frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion." (D.I. 8, Ex. A, 4:36-39.) This first element requires processing an input DSSS signal by utilizing a second electromagnetic signal (the output of the oscillator) to create new signals. (*Id.*, 2:32-47.) After additional signal processing (in the "correlating" step of Claim 6), the process filters out signals associated with noise to leave a signal with a measurable "beat frequency" identifying the carrier frequency. (*Id.*, 2:48-3:6.) The Supreme Court's precedents "establish that the machine-or-transformation test is a useful and important clue . . . for determining whether some claimed inventions are processes under § 101." *Bilski v. Kappos*, 561 U.S. 593, 604 (2010). The process covered in Claim 6 transforms physical flows of energy (the electromagnetic DSSS signal) into information (the carrier frequency of the DSSS signal); it does not manipulate "*existing*

*information*" to generate "new information."

       b) The '421 Patent Is Directed To A Physical Task, Not An Abstract Idea.

The method of Claim 6 does not "manipulate existing information . . . to generate new information." (Motion at 8.) Rather, it takes physical DSSS signals (electromagnetic waves), processes the signal utilizing additional signals, and transforms those physical signals into information (the carrier frequency) needed to improve the reliable operation of wireless communications systems that communicate using DSSS signals. Onkyo mischaracterizes the holding of Federal Circuit caselaw in an effort to mislead this Court into accepting that signal processing is akin to organizing and analyzing information. (Motion at 11 ("[T]he Federal Circuit has held [signals] are merely physical embodiments of data and not patent eligible.") (citing *Digitech*, 758 F.3d at 1350; *In re Nuijten*, 500 F.3d 1346, 1351 (Fed. Cir. 2007)).) *Nuijten* held that a <u>signal</u> itself is not patent-eligible subject matter despite its "physical properties." *Digitech*, 758 F.3d at 1350. However, as the Federal Circuit noted in *Nuijten*, the patentee there had "already obtained allowance of ten claims . . . directed to" the inventive ***process*** of adding watermarks to signals. *Nuijten*, 500 F.3d at 1350-51. *Nuijten* supports Castlemorton's argument that methods of processing electromagnetic signals are patent-eligible subject matter.

Onkyo attempts to analogize Claim 6 to ineligible patent claims that simply organize and analyze information by calling a DSSS signal "existing information" and equating it to the same type of information (the carrier frequency) identified by the process of Claim 6. (Motion at 8.) This is wrong. The DSSS signal is a physical flow of electromagnetic energy; the carrier frequency identified at the end of the process of Claim 6 is information.

Onkyo's statement that the method of Claim 6 is something "a human being could perform . . . mentally or with pen and paper" underscores how misguided its § 101 analysis is. (Motion at 11.) Claim 6 is limited to a method of "detecting the carrier frequency of a DSSS signal." (D.I.

8, Ex. A, 4:34-35.)  Detecting a DSSS frequency is not a math problem that an engineering student can perform with pencil and paper – DSSS signals are actual electromagnetic signals that constantly surround us in the physical world.  *Cf. Stormborn*, 2020 U.S. Dist. LEXIS 47122, at *3 ("In telecommunication and radio communication, spread-spectrum techniques are methods by which a signal (e.g., an electrical, electromagnetic, or acoustic signal) generated with a particular bandwidth is deliberately spread in the frequency domain, resulting in a signal with a wider bandwidth.").  In *2-Way Computing, Inc. v. Grandstream Networks, Inc.*, the court considered a similar physical medium—sound waves—and explained, "[s]ound waves are not abstract concepts but fluctuations in air pressure in the physical world."  2016 U.S. Dist. LEXIS 144080, at *9 (D. Nev. Oct. 18, 2016).  DSSS signals are invisible to the human eye; a person cannot determine the carrier frequency of such a signal in his or her mind, and he or she cannot do so by simply applying mathematical formulas to them.  (Wills Decl. ¶¶ 33-36.)

**B.**   *Alice* **Step Two: Claim 6 Contains An Inventive Concept.**

Although proceeding to step two of the *Alice* analysis is not required as Claim 6 of the '421 Patent recites a patent eligible technological invention, Onkyo's Motion also fails with respect to step two.  Step two of the *Alice* framework involves identifying the "inventive concept" and determining whether it is "sufficient to transform the nature of the claim into a patent eligible application."  *McRO, Inc.*, 837 F.3d at 1312 (citing *Alice*, 134 S. Ct. at 2355) (quotations omitted).  This step entails looking at the claim to determine whether the limitations "taken together as an ordered combination . . . recite an invention that is not merely the routine or conventional use of the [underlying technology]" and that is sufficiently specific so as to negate the risk of preemption.  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014).

1.   The Claimed Invention Involves Unconventional Technological Solutions Under Step Two.

As explained above, the '421 Patent provides an unconventional solution to a technological problem in the field—the need to determine the carrier frequency of DSSS signals. Claim 6 "solve[s] that problem in a particular, technical way" by performing frequency inversion on the DSSS signal and correlating the inverted and non-inverted DSSS signals to create a beat frequency from which the carrier frequency of the DSSS signal can be determined. *BASCOM*, 827 F.3d at 1350-51. This "particular arrangement of elements" yields a "technical improvement over prior art technologies." *Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1302 (Fed. Cir. 2016). That improvement is not merely the "improved speed or efficiency inherent with applying the abstract idea on a computer." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016). For example, the process described in Claim 6 may utilize "a local oscillator, a frequency mixer" to perform frequency inversion (D.I. 8, Ex. A, 1:59-61); "a phase-locked loop, a band-pass filter, or a spectrum analyzer" as the correlating filter (*Id.*, 1:64-65). The mere use of these circuitry components, however, does not result in determining the carrier frequency of a DSSS carrier frequency. Like the claims in *DDR Holdings*, the improvement relates to "how interactions with [conventional technology] are manipulated to yield a desired result." 773 F.3d at 1258. Existing prior art technologies had difficulty identifying the carrier signal of a DSSS signal. (D.I. 8, ¶¶ 44-45, 49; Ex. A, 1:17-18; Wills Decl. ¶¶ 23-24, 27-32.)[7] Further, the limitations in the '421 Patent would have been understood by one of ordinary skill in the art in 1983 to be unconventional. (Wills Decl. ¶ 37.)

       2.      <u>A Preemption Analysis Confirms That The '421 Patent Is Not Abstract.</u>

---

[7] The comparison of the '421 Patent's technology to prior art systems contained in the FAC and the specification highlight that, to the extent determining the carrier frequency of a DSSS signal could be characterized as an "abstract idea," the method of Claim 6 does not preempt all methods of carrier frequency detection. *See RICPI Commuxns. LLC v. JPS Interoperability Solutions, Inc.*, 2019 U.S. Dist. LEXIS 43576, at *11 (D. Del. Mar. 18, 2019) (Andrews, J.).

The '421 Patent does not implicate preemption concerns. *See, e.g.*, *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("The Supreme Court has made clear that the principle of preemption is the basis for the judicial exceptions to patentability."). The challenged claim of the '421 Patent (Claim 6) is narrowly drawn to improving the operation of telecommunications equipment that receives a DSSS signal with a suppressed carrier frequency. The '421 Patent does not preempt all techniques for identifying a suppressed carrier frequency as illustrated by systems in the prior art that use different techniques to perform this function. (Wills Decl. ¶¶ 37-38.) Further, other wireless standards do not practice the carrier frequency identification method covered in Claim 6. For example, Onkyo identifies 802.11 n and 802.11 ac as non-infringing wireless protocols the accused products can implement. (Motion at 13.)

### C. Claim 6 Of The '421 Patent Is Not Representative Of All Claims.

It is unclear whether Onkyo is asking the Court to invalidate all six claims of the '421 Patent or just Claim 6. (Motion at 1, 12.) This underscores the prematurity of the Motion. "A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2013); *see also France Telecom S.A. v. Marvell Semiconductor Inc.*, 2014 U.S. Dist. LEXIS 52564, at *9 (N.D. Cal. Apr. 14, 2014) ("Supreme Court precedents require a 'claim-by-claim approach to subject-matter eligibility.'").[8]

Reliance on a representative claim is only proper if "all the claims are 'substantially similar and linked to the same abstract idea.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Claims 1-5 are means-plus-function

---

[8] Onkyo infringes more than just claim 6; however, a patentee is not required to identify each infringed claim at the pleading stage. *See Promos Techs., Inc. v. Samsung Elecs. Co.*, 2018 U.S. Dist. LEXIS 186276, at *6 (D. Del. Oct. 31, 2018) (pleading "at least one claim allegedly infringed under each asserted patent" is sufficient).

claims, which are not "substantially similar" to the method claim of Claim 6.

### D. Onkyo's Patent Eligibility Argument Should Be Denied As Premature.

Unlike typical patent litigation, where a court analyzes claims that were invented no more than 10-20 years prior, the '421 Patent was invented more than 37 years ago. The concerns with avoiding hindsight bias are particularly acute in this case. *See Egenera, Inc. v. Cisco Sys.*, 234 F. Supp. 3d 331, 343 n.4 (D. Mass. 2017) ("To the extent that subject matter eligibility inquiry requires assessing the state of the art, that assessment, as in the §§ 102 and 103 context, must be conducted from the perspective of a person of ordinary skill in the art at the time of the invention to avoid the usual temptations of hindsight.").

As the '421 Patent must be evaluated through the lens of a person of ordinary skill in the art in 1983, factual issues relating to the nature of the alleged abstract idea and the unconventional claim elements are of particular concern and properly the subject of an expert declaration. To assist the Court, Castlemorton submits herewith a declaration from Dr. Craig Wills. Dr. Wills' declaration raises issues of factual dispute that underscore the premature nature of challenging patent eligibility on a motion to dismiss. *See Express Mobile, Inc. v. DreamHost LLC*, 2019 U.S. Dist. LEXIS 101468, at *5-6 (D. Del. June 18, 2019) ("Plaintiff identified factual allegations of inventiveness in the complaint and submitted an expert declaration explaining inventiveness of the claims. . . . I find that these factual issues preclude a finding of invalidity on a motion to dismiss."); *Pacific Biosciences of California, Inc., v. Oxford Nanopore Technologies, Inc.*, No. 17-cv-275-RGA, Dkt. No. 23 (November 9, 2017) (finding a disputed factual record, based in part on an expert declaration, precluded a patent eligibility determination at the pleading stage).

### VI. CASTLEMORTON HAS SUFFICIENTLY PLED DIRECT INFRINGEMENT

Onkyo's argument that the FAC "fail[s] to state a claim for direct infringement as a matter of law" (Motion at 12), ignores the actual allegations in the FAC and is based on mischaracterizing

relevant law. Onkyo's motion attempts to raise the pleading standard far beyond what is required by law. As the Federal Circuit reminded litigants, to satisfy the pleading standard in a patent case "[s]pecific facts are not necessary." *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018). Instead, the opposing party need only be given "fair notice of what the [infringement] claim is and the ground upon which it rests." *Id.*

Castlemorton alleges infringement under the *Iqbal*/*Twombly* standard by identifying the claims infringed, the infringing products, and the nature of the infringement. As an illustration, the FAC identifies both the relevant categories of accused products with specificity (*e.g.*, Pioneer AV Receivers; Pioneer Onkyo AV Receivers; and Pioneer Speaker Systems with WiFi) and also provided dozens of exemplary product names and numbers. (D.I. 8, ¶ 56). The FAC pinpoints the accused functionality ("detecting a carrier frequency of a direct sequence spread spectrum signal") (*id.*, ¶ 57), provides substantiation through documentation distributed by Onkyo that each of the accused Onkyo products perform the accused functionality (*id.*, ¶¶ 58-59), and details how the accused devices detect a carrier frequency in a DSSS signal (*id.*, ¶¶ 62-81). This is more than sufficient. *See, e.g., Election Sys. & Software, LLC v. Smartmatic United States Corp.*, 2019 U.S. Dist. LEXIS 34738, at *3 (D. Del. Mar. 5, 2019) ("It seems apparent to me that the [Federal Circuit's] view is that very little is required in order to plead a claim of patent infringement.").

Onkyo argues without any supporting authority that Castlemorton's pleadings are deficient because the accused products can operate utilizing non-infringing wireless communications protocols. (Motion at 13.) Onkyo mischaracterizes the FAC; as pled in the FAC, the accused products infringe when they operate in compliance with the 802.11 b or 802.11 g standards. (D.I. 8, ¶ 63.) Onkyo further focuses only on the allegations that Further, the FAC alleges that Onkyo, among other things, "use[s and] test[s]" the accused products in a manner that infringes the '421

Patent. (*Id.*, ¶¶ 64-85.) These allegations sufficiently allege direct infringement of a method claim. *See, e.g., Sentius Int'l, LLC v. Microsoft Corp.*, 78 F. Supp. 3d 967, 973-74 (N.D. Cal. Jan. 23, 2015) (finding evidence that Microsoft used and tested functionality in its Microsoft Office product could reasonably support a finding of direct infringement of a method claim). Onkyo puts forward a declaration stating that it does not "test" the products "in the regular course of business." (D.I. 14, ¶ 8.) Onkyo notably does not counter the FAC's allegation that Onkyo "uses" the accused products. Further, Onkyo's declaration attacking the allegation that Onkyo tests the accused products impermissibly introduces a disputed issue of fact at the pleading stage.

The cases cited by Onkyo confirm the sufficiency of the pleadings and are readily distinguishable. In *Super Interconnect Techs. LLC v. HP Inc.*, the complaint failed to "allege facts showing *how* the technology, the standard, or the accused product plausibly reads on the claim elements." 2019 U.S. Dist. LEXIS 217315, at *4 (D. Del. Dec. 18, 2019). Here, Castlemorton provides detailed allegations showing how each claim element is performed. For example, the FAC alleges the Onkyo products identify a carrier frequency in a DSSS signal with a "spectral range between 2.400-2.4835 GHz." (D.I. 8, ¶ 72.)

In *Modern Telecom Sys., LLC v. TCL Corp.*, the complaint merely listed the language of the claim and alleged the products "satisfies, literally or under the doctrine of equivalents, each and every claim limitation." 2017 U.S. Dist. LEXIS 209717 at *4 (D. Del. 2017). In contrast, Castlemorton has provided significant detail illustrating how the Onkyo products, by complying with the 802.11b standard perform the claim elements. Onkyo argues that the FAC does not allege how the products used in compliance with the 802.11b or g standards perform each step of Claim 6. (Motion at 14.) In fact, the FAC explains that "mandatory sections of the 802.11b and/or 802.11g standard require the elements required by certain claims of the '421 patent." (D.I. 8 ¶ 63.)

The FAC then goes on to pinpoint the specific sections of the 802.11b standard that are mandatory and infringe the '421 Patent.

## VII.  CASTLEMORTON PROPERLY PLEADS INDUCED INFRINGEMENT.

Castlemorton's FAC pleads that Onkyo's customers directly infringe the patent-in-suit, and that the Defendants had knowledge of the '421 Patent and Castlemorton's allegations of induced infringement at least since service of the original complaint in the case of Pioneer & Onkyo U.S.A. Corporation, and the FAC for Onkyo U.S.A. Corporation.  (*See* D.I. 8, ¶¶ 87-88.)

Onkyo disputes that Castlemorton has adequately pled Onkyo's specific intent.  (Motion at 15-16.)  Castlemorton pleads Onkyo "continues to induce users of the accused products to use the accused products in their ordinary and customary way to infringe the '421 Patent, knowing that such use constitutes infringement of the '421 patent."  (D.I. 8, ¶ 89.)  Castlemorton then cites ***nine*** product- and feature-specific user guides and web pages Onkyo provides its customers that support its allegations that Onkyo continues, even after receiving notice of the patent-in-suit and the infringement allegations contained in the FAC, to instruct its customers and end users how to directly infringe.  (*Id.*, ¶ 89 n.60.)  Without explaining alleged deficiencies with any of the specific documents cited by Castlemorton, Onkyo simply dismisses the FAC's allegations as "legal conclusions" and "conclusory statements."  (Motion at 16.)

Onkyo cites this Court's decision in *Nexeon Ltd. v. Eaglepircher Techs., LLC* to support its argument, but there the Court provided examples of adequate evidence of specific intent, including "advertising an infringing use or instructing how to engage in an infringing use."  2016 U.S. Dist. LEXIS 96995, at *14 (D. Del. July 26, 2016) (quotation omitted).  The nine specific documents cited in the FAC provide precisely this type of evidence of Onkyo's specific intent. This is far more specific than the conclusory allegations of advertising and technical support

alleged in the *Pragmatus AV* case cited by Onkyo.  (Motion at 16-17.)[9]

Onkyo makes an illogical leap that because Castlemorton's induced infringement allegations in this case are the same as in other cases "except for the list" of specific documents supporting each Defendant's specific intent to induce infringement, the FAC's allegations are somehow deficient.  (Motion at 16-17.)  The similarity of allegations across the five cited cases is unsurprising; Castlemorton's alleges in this case, as in the others Onkyo cites, that the defendants encourage and teach end-user customers to utilize products pursuant to one of two wireless communication standards.  Onkyo, however, attempts to gloss over the fact that, in each case, Castlemorton cites defendant-, product-, and feature-specific documents showing specific examples of such encouragement and teaching.  (D.I. 8 ¶ 89 n.60.)

Onkyo objects to Castlemorton's reliance on post-filing activities.  (Motion at 18.) However, "there is no requirement that plaintiff's induced infringement claim be limited to pre-suit knowledge and facts."  *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 393 (D. Del. 2013).[10]  Onkyo argues that the induced infringement claim "should be limited to post-suit activities" (Motion at 17); Castlemorton does not allege pre-suit induced infringement.

## VIII. CONCLUSION

Castlemorton respectfully requests that the Court deny Onkyo's Motion in its entirety.[11]

---

[9] *See Pragmatus AV, LLC v. TangoMe, Inc.*, 2013 U.S. Dist. LEXIS 19075, at *38-40 (D. Del. Feb. 13, 2013) (allegations that just stated the Defendant "has and continues to infringe indirectly . . . by inducing others to infringe" were insufficient because they "contain no factual assertions").

[10] *See also*, *Collabo Innovations, Inc. v. OmniVision Techs., Inc.*, 2017 U.S. Dist. LEXIS 10199, at *24 (D. Del. Jan. 25, 2017) ("Collabo's post-filing date knowledge of the patents-in-suit is sufficient to state a claim for indirect infringement occurring after service of the complaint") (adopted by 2017 U.S. Dist. LEXIS 21031 (D. Del. Feb. 14, 2017)).

[11] In the event the Court finds Castlemorton's pleading deficient in any way, Castlemorton requests leave to amend its Complaint to address any deficiencies.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Dated:  April 30, 2020

OF COUNSEL:

Dorian S. Berger
Daniel P. Hipskind
Eric B. Hanson
BERGER & HIPSKIND LLP
9538 Brighton Way, Ste. 320
Beverly Hills, CA 90210
(323) 886-3430
dsb@bergerhipskind.com
dph@bergerhipskind.com
ebh@bergerhipskind.com

BAYARD, P.A.

/s/ *Stephen B. Brauerman*
Stephen B. Brauerman (#4952)
600 N. King Street, Suite 400
Wilmington, Delaware 19801
(302) 655-5000
sbrauerman@bayardlaw.com

*Attorneys for Plaintiff*
*Castlemorton Wireless, LLC*