# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CASTLEMORTON WIRELESS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>PIONEER & ONKYO U.S.A. CORPORATION and ONKYO U.S.A. CORPORATION,<br><br>    Defendants. | Civil Action No. 1:20-CV-00057-RGA |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Anthony F. Lo Cicero (*Admitted Pro Hac Vice*)
Mark Berkowitz (*Admitted Pro Hac Vice*)
Marc J. Jason (*Admitted Pro Hac Vice*)
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
212.336.8000
alocicero@arelaw.com
mberkowitz@arelaw.com
mjason@arelaw.com

Kenneth L. Dorsney (I.D. #3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

Dated: May 14, 2020

*Attorneys For Defendants Pioneer & Onkyo U.S.A. Corporation and Onkyo U.S.A. Corporation*

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. THE COMPLAINT SHOULD BE DISMISSED ...........................................................2

    A. Castlemorton Confirms That the Claims of the '421 Patent Are Invalid Under 35 U.S.C. § 101 ..................................................................................2

        1. Castlemorton Fails to Rebut Step One of the *Alice* Analysis ......................2

        2. Castlemorton Fails to Rebut Step Two of the *Alice* Analysis......................5

        3. Castlemorton Fails to Explain Why Claim 6 Is Not Representative of All Claims ..........................................................................................6

    B. Patent Eligibility Argument Is Not Premature............................................6

    C. Castlemorton's Direct Infringement Claims Rely On Conclusory Allegations ..................................................................................................6

    D. Castlemorton's Inducement Claim is Deficient and Should be Dismissed or, Alternatively, Limited to Post-Complaint Activities..........................8

III. CONCLUSION................................................................................................10

4843-5402-4379v.2
11680843/1

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)..................................................................................1, 2, 5, 6

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
    939 F.3d 1355 (Fed. Cir. 2019).................................................................................3

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................8, 9

*BSG Tech LLC v. BuySeasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018).................................................................................5

*Collabo Innovations, Inc. v. OmniVision Techs., Inc.*,
    No. 16-197-SLR-SRF,
    2017 U.S. Dist. LEXIS 10199 (D. Del. Jan. 25, 2017)............................................10

*DermaFocus LLC v. Ulthera, Inc.*,
    201 F. Supp. 3d 465 (D. Del. 2016)..........................................................................10

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014).................................................................................3, 4

*DoDots Licensing Solutions. v. Lenovo Holding Co.*,
    No. 18-cv-098-MN,
    2018 U.S. Dist. LEXIS 213202 (D. Del. Dec. 19, 2018)..........................................9

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
    363 F.3d 1263 (Fed. Cir. 2004).................................................................................8

*Gottschalk v. Benson*,
    409 U.S. 63 (1972)....................................................................................................4

*Helios Streaming, LLC v. Vudu, Inc.*,
    No. 19-1792-CFC-SRF,
    2020 U.S. Dist. LEXIS 82376 (D. Del. May 11, 2020)............................................8, 9

*Huawei Techs. Co. v. Samsung Elecs. Co*,
  No. 3:16-cv-02787-WHO,
  2016 U.S. Dist. LEXIS 162039 (N.D. Cal. Nov. 21, 2016) ...................................................... 3

*Hyper Search, LLC v. Facebook, Inc.*,
  No. 17-1387-CFC-SRF,
  2018 U.S. Dist. LEXIS 212336 (D. Del. Dec. 17, 2018) ..................................................... 2, 5

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ............................................................................................... 5

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
  714 F.3d 1277 (Fed. Cir. 2013) ............................................................................................... 7

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
  869 F.3d 1372 (Fed. Cir. 2017) ............................................................................................... 7

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ............................................................................................... 2

*Nice Sys. Ltd. v. Clickfox, Inc.*,
  207 F. Supp. 3d 393 (D. Del. 2016) ........................................................................................ 5

*In re Nuijten*,
  500 F.3d 1346 (Fed. Cir. 2007) ............................................................................................... 3

*Parker v. Flook*,
  437 U.S. 584 (1978) ............................................................................................................ 4, 5

*Pragmatus AV, LLC v. TangoMe, Inc.*,
  No. 11-1092-LPS-CJB,
  2013 U.S. Dist. LEXIS 19075 (D. Del. Feb. 13, 2013) ........................................................... 9

*In re Richman*,
  563 F.2d 1026 (1977) .............................................................................................................. 4

*S.I.SV.EL Societa Italiana Per Lo Svilippo Dell'
  Electronica S.P.A v. Rhapsopy Int'l Inc.*,
  No. 18-69-MN-CJB,
  2019 U.S. Dist. LEXIS 69891 (D. Del. Apr. 24, 2019) ........................................................... 2

**STATUTES**

35 U.S.C. § 101 .............................................................................................................................. 2

**Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 10

4843-5402-4379v.2
11680843/1

**I.     INTRODUCTION**

Castlemorton's Opposition Brief (D.I. 16, "Opp'n") fails to refute the grounds for dismissal of the First Amended Complaint ("FAC") as set forth by the Onkyo Defendants in their opening brief.

First, Castlemorton's argument that Claim 6 of the '421 Patent is patent eligible ignores the language of the claim, which contains no technical implementation details whatsoever. Nothing Castlemorton points to in its Opposition Brief changes the basic character of Claim 6, which merely recites mathematical operations to determine a property of a DSSS signal. None of the claim limitations transform that basic character into the "something more" required for patent eligibility. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).

Second, Castlemorton's direct infringement allegations also fail. The Onkyo Defendants are product distributors, and they do not manufacture or develop any of the accused products. (D.I. 14 ¶ 3.) Moreover, Castlemorton's fallback position of alleged "use" by the Onkyo Defendants is insufficient to avoid dismissal. The FAC fails to plead any facts that would support this theory of defendants' "use" such as, where the alleged use occurred, when it occurred, who performed the allegedly infringing act, or why the alleged use was made. Aside from the lack of supporting facts, the assertion of direct infringement is not plausible. Castlemorton's failure to allege the circumstances of the alleged infringing "use" is particularly glaring because the accused products can also operate in non-infringing manners.[1]

Third, Castlemorton's allegations of inducement simply parrot the legal elements of the claim, without reciting any supporting facts. (D.I. 13, "Onkyo Br." 15-16.) This pleading

---

[1] Castlemorton does not dispute that accused products are capable of non-infringing uses. (Opp'n 15.)

failure is confirmed by the fact that Castlemorton made the exact same allegations of inducement in all five of its complaints against different defendants. The notion that all defendants in five lawsuits allegedly induced infringement of Claim 6 of the '421 Patent in exactly the same way defies reason.

## II. THE COMPLAINT SHOULD BE DISMISSED

### A. Castlemorton Confirms That the Claims of the '421 Patent Are Invalid Under 35 U.S.C. § 101

#### 1. Castlemorton Fails to Rebut Step One of the *Alice* Analysis

Castlemorton argues that the '421 Patent is directed to patent-eligible subject matter and asserts that "specific means or method that improves the relevant technology" are patent-eligible concepts and not abstract ideas. (Opp'n 4 (citing *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).) But Castlemorton does nothing more than make conclusory assertions to support this argument. It fails to identify any language in Claim 6 that constitutes such a "specific means or method." Such conclusory allegations are insufficient. *See Hyper Search, LLC v. Facebook, Inc.*, No. 17-1387-CFC-SRF, 2018 U.S. Dist. LEXIS 212336, at *14 (D. Del. Dec. 17, 2018) (plaintiff failed to "identify any concrete patent-eligible invention tied to the language of the claims").

While insisting that Claim 6 is not merely an abstract idea or "mathematical algorithm," Castlemorton fails to identify any "concrete patent-eligible invention tied to the language" of Claim 6. (Opp'n 4-9.) Like the patentee in *S.I.SV.EL Societa Italiana Per Lo Sviliippo Dell' Electronica S.P.A v. Rhapsopy Int'l Inc.*, No. 18-69-MN-CJB, 2019 U.S. Dist. LEXIS 69891 (D. Del. Apr. 24, 2019), Castlemorton relies solely on its own conclusory claims that the method of identifying the carrier signal of a DSSS signal solves a telecommunications-related problem. *Id.* at *16 (patentee's claims that certain "features/elements/components were 'unconventional when

2

taken alone' or were individually 'unconventional' or were 'previously unknown' in the field" were found "purely conclusory").

Castlemorton further argues that Claim 6 is not abstract because the *specification* teaches using physical devices, including "a local oscillator, a frequency mixer, and a filter," to perform the claimed method steps. (Opp'n 5.) This argument is meritless. Claim 6 makes no mention of any of these physical components. Features not recited in the claims are irrelevant as to the *Mayo/Alice* analysis, and therefore Castlemorton's argument that the *specification* discloses these features is likewise irrelevant. *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 939 F.3d 1355, 1363 (Fed. Cir. 2019).

As the Federal Circuit explained in *Digitech Image Technologies, LLC*, simply because "a signal had physical properties with 'tangible causes and effects … such transitory embodiments are not directed to statutory subject matter.'" *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (quoting *In re Nuijten*, 500 F.3d 1346, 1353, 1357 (Fed. Cir. 2007)). Likewise, analyzing a DSSS signal, or "a physical flow of electromagnetic energy," through the use of well-known mathematical operations merely identifies *existing* information. Castlemorton's failure to identify any specific <u>structure</u> recited by Claim 6 confirms the applicability of the Federal Circuit's holding in *Digitech*: "The method in the ['421] patent claims an abstract idea because it describes a process of organizing information through mathematical correlations and is not tied to a specific structure or machine." *Id*. at 1350.

Unlike the cases Castlemorton relies on its Opposition Brief, Claim 6 does not *change* the DSSS signal or *produce* a new frequency, and it "simply provide[s] a new and presumably better method of calculating" a carrier frequency signal, as it already exists in nature. *See Huawei*

3

*Techs. Co. v. Samsung Elecs. Co*, No. 3:16-cv-02787-WHO, 2016 U.S. Dist. LEXIS 162039, at *27-28 (N.D. Cal. Nov. 21, 2016) (quoting *Parker v. Flook*, 437 U.S. 584, 594-595 (1978)). The "specific" functions that Castlemorton points out to support patent eligibility are merely mathematical methods of calculating a carrier frequency from an *existing* DSSS signal. As in *Digitech*, the claims of the '421 Patent include nothing more than the identification of the "causes and effects" of patent-ineligible subject matter.

Claim 6 is directed to a mathematical algorithm for manipulating information without describing the technique used to do the subtraction, how the correlation is performed, or how the carrier signal is identified.[2] *Gottschalk v. Benson*, 409 U.S. 63, 73 (1972) (the mathematical process of converting signals from binary-coded decimal form into binary was found patent-ineligible because the claims only recited the steps of "shifting," "masking," and "adding" sequences.) Here, Claim 6 is even more abstract than the claim found ineligible in *Benson*, as it merely recites two basic mathematical operations and an unconnected, unexplained result. The Supreme Court applied the same reasoning in *Flook*: "'[I]f a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory.'" 437 U.S. at 595 (quoting *In re Richman*, 563 F.2d 1026, 1030 (1977)). Claim 6 is likewise directed to patent-ineligible mathematical formula.

---

[2] In its Opposition Brief, Castlemorton's quotation of the "subtraction" language of Claim 6 is not accurate. (Opp'n 11.) It omitted the underlined language as follows: "subtracting the DSSS signal from a signal having a higher frequency than an frequency in the DSSS signal spectrum to produce DSSS signal frequency spectrum inversion." This omission is significant because it is being challenged on grounds of indefiniteness and will be subject to a ruling in a case currently pending in the United States District Court for the Western District of Texas. D.I. 17, 18, 22, 24, 27, 28, *Castlemorton Wireless, LLC v. Bose Corp.*, Civil Action No. 6-20-cv-00029.

### 2. Castlemorton Fails to Rebut Step Two of the *Alice* Analysis

Even if the Court were to conclude that claims of the '421 Patent recite some improvements in functionality, any such improvements would constitute patent-ineligible "benefits that flow from performing an abstract idea in conjunction with . . . well-known" telecommunication systems. *Hyper Search,* 2018 U.S. Dist. LEXIS 212336, at *21 (quoting *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018)). Castlemorton identifies a series of steps—subtracting and correlating DSSS signals to determine a carrier frequency—as the "inventive concept" of Claim 6. But as the specification makes clear, these steps are merely mathematical operations. (*See, e.g.*, '421 Patent, 2:36-65.) Indeed, nothing remains of Claim 6 once its patent-ineligible recitations of abstract mathematical operations (i.e., subtracting signals, correlating signals, and identifying a frequency), are eliminated.

Castlemorton argues that a few mathematical operations provide an unconventional technological solution, without identifying that solution. "[A] new and presumably better method of calculating" the carrier signal of a DSSS signal is insufficient to transform Claim 6 into a patent-eligible concept. *Flook*, 437 U.S. at 594-95; *see also Nice Sys. Ltd. v. Clickfox, Inc.*, 207 F. Supp. 3d 393, 400 (D. Del. 2016) ("[N]either 'a simple instruction to apply an abstract idea on a computer,' nor 'claiming the improved speed or efficiency inherent with applying the abstract idea on a computer' satisfies the requirement of an 'inventive concept.'" (quoting *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015))).

Castlemorton also argues that Claim 6 "would have been understood by one of ordinary skill in the art in 1983 to be unconventional" (*e.g.* Opp'n 14), but fails to specify how either (1) the application of mathematical operations to DSSS signals is unconventional or (2) the identification of a specific carrier frequency is a technological improvement. Subtracting and

correlating DSSS signals to identify a carrier frequency using well-known technologies (e.g., a local oscillator or frequency mixer as described in the specification) is not an inventive concept, and Castlemorton fails to demonstrate otherwise.

### 3. Castlemorton Fails to Explain Why Claim 6 Is Not Representative of All Claims

Claims 1-5 are nearly identical to Claim 6, except for the additional "means" claim language before the recitation of steps. Castlemorton argues that because Claims 1-5 are means-plus-function claims, they "are not 'substantially similar' to the method claim of Claim 6," but cites to no authority to support its conclusory allegation. (Opp'n 15-16.) Castlemorton does not identify any differences in claim language or claim scope, and fails to articulate any terms that need to be construed—only the mistaken and unsupported conclusion that method claims cannot be representative of means-plus-function claims. Thus, Castlemorton fails to show that Claim 6 is not representative of Claims 1-5.

### B. Patent Eligibility Argument Is Not Premature

Castlemorton criticizes the Onkyo Defendants for failing to analyze patent eligibility through the lens of a person of ordinary skill in the art at the time the patent was filed and argues that "factual issues relating to the nature of the alleged abstract idea and the unconventional claim elements are . . . properly the subject of an expert declaration." (Opp'n 16.) However, Castlemorton fails to identify any factual disputes or claim terms for which expert interpretation would be relevant to the *Alice* analysis. The declaration of Castlemorton's purported expert, Dr. Wills, is irrelevant to the instant motion.

### C. Castlemorton's Direct Infringement Claims Rely On Conclusory Allegations

The FAC alleges that the Onkyo Defendants directly infringe at least Claim 6 of the '421 Patent by "making, using, testing, importing, offering for sale" the accused products. (D.I. 8 ¶

85.) As demonstrated in the Onkyo Defendants' opening papers, the facts alleged in the FAC do not plausibly establish direct infringement since: (1) Claim 6, the sole claim specifically alleged for direct infringement in the FAC, is a method claim; (2) the Onkyo Defendants are merely distributors of the accused products, not manufacturers. (Onkyo Br. 13.)

Castlemorton contends that its allegations of "use" of the accused products by the Onkyo Defendants, if any, is sufficient to avoid dismissal. (Opp'n 17-18.) Castlemorton's position is both legally incorrect and factually implausible.

Castlemorton's infringement allegations now provide that the Onkyo Defendants directly infringe at least Claim 6 of the '421 Patent "by . . . using . . . products . . . for identifying a carrier frequency from a correlation signal." (D.I. 8 ¶ 85.) This allegation epitomizes the type of "threadbare" and "conclusory" statements that "do not suffice" under Supreme Court precedent. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

As the Federal Circuit explained, "[o]ur precedent requires that a complaint place the alleged infringer 'on notice of what activity . . . is being accused of infringement.'" *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (quoting *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013)). This can be accomplished, *inter alia*, by pleading facts that identify: "where the alleged infringement occurred," "when it occurred," "who performed the allegedly infringing act," and "why" the alleged use was made. *Lifetime Indus., Inc.*, 869 F.3d at 1379. The FAC provides no such facts and therefore does not "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Castlemorton's "use" theory is also not plausible. The Onkyo Defendants are merely product distributors. (D.I. 14 ¶ 3.) Castlemorton never states under what circumstances the

Onkyo Defendants would have possibly used or tested the accused products. Furthermore, it is not plausible that the Onkyo Defendants would have "used" the accused products in compliance with the allegedly infringing, older 802.11 b or 802.11 g standards, rather than the newer 802.11 n or 802.11 ac standards, which Castlemorton does not dispute are non-infringing. (Opp'n 15.)

Castlemorton's direct infringement allegations, even accepted as true, fail to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). They should be dismissed.

### D. Castlemorton's Inducement Claim is Deficient and Should be Dismissed or, Alternatively, Limited to Post-Complaint Activities

Castlemorton's inducement allegations are deficient because they simply parrot the legal elements of the claim, without reciting any supporting facts. (Onkyo Br. 15-16.) Castlemorton's generic reference to nine product manuals is not enough to overcome this deficiency. Castlemorton does not even attempt to provide one example from the manuals explaining *how* those manuals encourage end-users to perform the steps of the claimed method. This deficiency is particularly glaring when the accused products are capable of operating in non-infringing manners. *Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792-CFC-SRF, 2020 U.S. Dist. LEXIS 82376, at *14-15 (D. Del. May 11, 2020) (citing *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1276 n.6 (Fed. Cir. 2004) (holding that "the sale of an accused product that may be used in an infringing manner, without active steps taken by the defendant to induce infringement, is not enough")). Such allegations are insufficient on their face to support a claim of specific intent to induce infringement. *DoDots Licensing Solutions. v. Lenovo Holding Co.*, No. 18-cv-098-MN, 2018 U.S. Dist. LEXIS 213202, at *13 (D. Del. Dec. 19, 2018) (dismissing inducement claim where "[a]lthough Plaintiff cites Defendants' website as support for its

8

allegation, it does so generically and does not identify any particular statement or material that plausibly suggests Defendants intend to induce infringement").

Furthermore, the notion that six different parties in five lawsuits induced infringement of Claim 6 of the '421 Patent by encouraging end-user customers to utilize products pursuant to one of two wireless communication standards *in exactly the same way in their respective product manuals* is not plausible on its face.

There is no dispute that Castlemorton's inducement theory requires both knowledge of the '421 Patent and knowledge that the alleged acts constitute patent infringement. In this regard, Castlemorton relies on its complaints to satisfy this knowledge requirement. However, Castlemorton's position is circular. "A complaint alleging post-suit inducement, which was drafted prior to the filing of the lawsuit, cannot state a viable claim for induced infringement." *Helios Streaming,* 2020 U.S. Dist. LEXIS 82376, at \*14. As discussed above, and in the Opening Brief, Castlemorton's infringement allegations fail to provide the Onkyo Defendants with "fair notice of what the . . . claim is and the grounds upon which it rests." *Pragmatus AV, LLC v. TangoMe, Inc.*, No. 11-1092-LPS-CJB, 2013 U.S. Dist. LEXIS 19075, at \*3 (D. Del. Feb. 13, 2013) (quoting *Twombly*, 550 U.S. at 555). Castlemorton should not be able to rely on these deficient allegations to satisfy the knowledge elements of inducement.

In any event, Castlemorton conveniently ignores its allegation in the FAC that "Onkyo has induced" infringement, and it now states that it does <u>not</u> allege pre-suit induced infringement. (Opp'n 20.) Thus, Castlemorton's inducement claim, if not dismissed, should be limited to the Onkyo Defendants' post-filing activities. *See Collabo Innovations, Inc. v. OmniVision Techs., Inc.*, No. 16-197-SLR-SRF, 2017 U.S. Dist. LEXIS 10199, at \*23-24 (D. Del. Jan. 25, 2017). (recommending that plaintiff's causes of action for indirect infringement be limited to conduct

9

occurring after the filing of the initial complaint); *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 471 (D. Del. 2016) (granting motion to dismiss claim as it relates to pre-complaint willfulness).

## III. CONCLUSION

The FAC should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: May 14, 2020              Respectfully submitted,

/s/ *Kenneth L. Dorsney*
Kenneth L. Dorsney (I.D. #3726)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19801
(302) 888-6800
kdorsney@morrisjames.com

Anthony F. Lo Cicero (*Admitted Pro Hac Vice*)
Mark Berkowitz (*Admitted Pro Hac Vice*)
Marc J. Jason (*Admitted Pro Hac Vic*)
AMSTER ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY 10016
212.336.8000
alocicero@arelaw.com
mberkowitz@arelaw.com
mjason@arelaw.com

**ATTORNEYS FOR DEFENDANTS PIONEER & ONKYO U.S.A. CORPORATION AND ONKYO U.S.A. CORPORATION**